No. 16-10521

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

MAURICE WALKER, ON BEHALF OF HIMSELF AND OTHERS SIMILARLY SITUATED,

*Plaintiff-Appellee,*

v.

CITY OF CALHOUN, GEORGIA,

*Defendant-Appellant.*

**On Appeal from the United States District Court for the
Northern District of Georgia,
No. 4:15-cv-00170-HLM**

## BRIEF OF APPELLANT CITY OF CALHOUN, GEORGIA

J. ANDERSON DAVIS
A. FRANKLIN BEACHAM III
SAMUEL L. LUCAS
BRINSON, ASKEW, BERRY
RICHARDSON & DAVIS, LLP
615 West 1st Street
Rome, Georgia 30161
(706) 291-8853

DAVID F. ROOT
ABBY C. GROZINE
CARLOCK COPELAND & STAIR,
LLP
191 Peachtree Street NE
Suite 3600
Atlanta, Georgia 30303
(404) 522-8220

GEORGE P. GOVIGNON
109 North Wall Street
Calhoun, Georgia 30701
(706) 629-7070

*Counsel for Defendant-Appellant*

June 14, 2016

## CERTIFICATE OF INTERESTED PERSONS

Appellant hereby certifies that the following is a full and complete list of the trial judges, all attorneys, persons, associations of persons, firms, partnerships or corporations that have an interest in the outcome of this appeal, as required by Rule 26.1 of the Federal Rules of Appellate Procedure and 11th Cir. R. 26.1-1, 26.1-2, and 26.1-3.

Beacham III, A. Franklin, Attorney for Appellant

Brinson, Askew, Berry, Seigler, Richardson & Davis, LLP

Carlock, Copeland & Stair LLP

City of Calhoun, Georgia, Appellant

Davis, J. Anderson, Attorney for Appellant

Equal Justice Under Law

Geraghty, Sarah, Attorney for Appellee

Govignon, George P., Attorney for Appellant

Grozine, Abby C., Attorney for Appellant

Karakatsanis, Alec, Attorney for Appellee

Lucas, Samuel L., Attorney for Appellant

Murphy, Honorable Harold L., United States District Judge

Primerano, Ryan, Attorney for Appellee

Root, David F., Attorney for Appellant

Southern Center for Human Rights

Walker, Maurice, Appellee

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument.  This appeal involves several issues of first impression among the federal Circuits, and specifically, to this Circuit, whether the use of a secured monetary bail schedule, as authorized by O.C.G.A. § 17-6-1(f)(1), violates the Fourteenth Amendment.  Oral argument may assist the Court in properly analyzing these issues and creating precedent.

Oral argument is warranted given the considerable impact this case will have not only on Georgia municipalities, but on courts throughout this country, given that Plaintiff challenges the use of monetary bail schedules with the publically stated goal of ending the cash-bond system.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ................................................. i

TABLE OF CITATIONS ...................................................................... vi

STATEMENT OF JURISDICTION .......................................................... xvii

STATEMENT OF THE ISSUES ................................................................. 1

STATEMENT OF THE CASE.................................................................... 2

    I.    STATEMENT OF THE FACTS............................................................ 2

        A. Plaintiff's Arrest and Municipal Court Proceedings. ........................ 2

        B.  Standing Bail Order of the Municipal Court. .................................. 3

        C.  Plaintiff has Not Provided Facts to Support His Conclusion that He

           is Indigent.......................................................................... 4

    II.    COURSE OF PROCEEDINGS ............................................................ 4

STANDARD OF REVIEW ...................................................................... 6

SUMMARY OF ARGUMENT .................................................................. 7

LEGAL STANDARD............................................................................. 12

ARGUMENT AND CITATION OF AUTHORITY.................................................. 13

I.    THE DISTRICT COURT'S ORDER GRANTING THE
PRELIMINARY INJUNCTION SHOULD BE REVERSED UNDER
PROPER CONSTITUTIONAL ANALYSIS ......................................... 13

A. Because Plaintiff Failed to Articulate a Claim, the District Court
Cannot Find that He is Likely to Succeed on the Merits. ................... 13

B. The District Court Erred by Not Conducting Any Constitutional
Analysis of O.C.G.A. § 17-6-1(f) ...................................................... 16

C. Plaintiff's Claims are Barred by *Younger* Abstention. ...................... 19

II.   PLAINTIFF CANNOT SUCCEED ON HIS FOURTEENTH
AMENDMENT CLAIMS BECAUSE O.C.G.A. § 17-6-1 *ET SEQ.* IS
CONSTITUTIONAL. ............................................................................ 24

A. This Court May Reach a Decision on the Merits Because the
Questions Raised are Purely Legal .................................................... 24

B. Georgia Law Rationally Provides for the Use of Bond Schedules.... 26

C. Neither *Pugh* Nor *Bearden* Holds that Secured Bail Schedules are
Unconstitutional ................................................................................. 30

iii

D. The Use of a Secured Monetary Bail Schedule is Constitutional...... 34

E. Plaintiff's Claims are Subject to Rational-Basis Review Because Wealth-Based Classifications are Not "Suspect Classifications" and No Fundamental Right is at Issue .............................................. 37

F. The Use of a Secured Monetary Bail Schedule Does Not Violate the Equal Protection or Due Process Clauses of the Fourteenth Amendment ...................................................................................... 41

G. The Standing Bail Order Satisfies All Constitutional Requirements 52

H. Plaintiff Failed to Petition for a Writ of Habeas Corpus ................... 55

I. No Policy of the Governing Authority Caused the Alleged Constitutional Injury ......................................................................... 57

III.  THE BALANCE OF EQUITIES WEIGHS AGAINST AN INJUNCTION BECAUSE THE CITY IS AND WOULD BE IRREPARABLY INJURED BY THE ISSUANCE OF AN INJUNCTION ...................................................................................... 62

IV.    THE HARM THE PRELIMINARY INJUNCTION IS CAUSING

OUTWEIGHS THE THREATENED INJURY TO PLAINTIFF .......... 65

V.    A PRELIMINARY INJUNCTION AGAINST THE CITY IS NOT IN

THE PUBLIC INTEREST .................................................................... 68

CONCLUSION .................................................................................................... 70

CERTIFICATE OF COMPLIANCE ........................................................................ 72

CERTIFICATE OF SERVICE ................................................................................ 73

ADDENDUM ..................................................................................................... 74

# TABLE OF CITATIONS

## Cases

*31 Foster Children v. Bush*, 329 F.3d 1255 (11th Cir. 2003)....................20

*Ackies v. Purdy*, 322 F.Supp. 38 (D.C. Fla. 1970). .................................35

*Albright v. Oliver*, 510 U.S. 266 (1994) ................................................48

*Anderson v. Dist. Bd. of Trustees Cent. Fla. Comm.*, 77 F.3d 364 (11th Cir. 1996)

................................................................................................13

*Ayala v. State,* 262 Ga. 704 (1993)..............................................26, 43

*Bannum, Inc. v. City of Fort Lauderdale*, 996 F.Supp. 1230 (S.D. Fla. 1997).......41

*Bearden v. Georgia*, 461 U.S. 660 (1983)........................................31, 32

*Bell v. Wolfish*, 441 U.S. 520 (1979) .......................................................49

*Bigford v. Taylor*, 834 F.2d 1213 (5th Cir. 1988)....................................59

*Bloedorn v. Grube*, 631 F.3d 1218 (11th Cir. 2011) .................................6

*Brooks v. Ga. State Bd. of Elections*, 59 F.3d 1114 (11th Cir. 1995).....................67

*Buffin v. City & Cnty. of San Francisco,* 4:15-cv-04959-YGR (N.D. Cal. 2015) ..15

*Burk v. Augusta-Richmond Cnty.*, 365 F.3d 1247 (11th Cir. 2004) .......................24

*Callaway v. Block*, 763 F.2d 1283 (11th Cir. 1985)....................................24

*Carbalan v. Vaughn*, 760 F.2d 662 (5th Cir. 1985)..................................59

*Carlson v. Landon*, 342 U.S. 524 (1952)..................................................39

vi

*Chafin v. Jones*, 243 Ga. 267 (1979) ...................................................................27

*Church v. City of Huntsville*, 30 F.3d 1332 (11th Cir. 1994) ...........................12, 66

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) .................................................63

*City of Riverside v. McLaughlin,* 500 U.S. 44 (1991) ......................................52, 53

*Clarke v. State*, 228 Ga. App. 219 (1997) ...........................................................28

*Collins v. Ainsworth*, 382 F.3d 529 (5th Cir. 2004) .........................................52, 55

*Corbett v. State*, 24 Ga. 391 (1858) .....................................................................27

*Doby v. Strength*, 758 F.2d 1405 (11th Cir. 1985) ...............................................22

*Douglas v. California,* 372 U.S. 353 (1963).........................................................47

*Drury v. Cox*, 457 F.2d 764 (9th Cir. 1972) ........................................................20

*Dunn v. Edwards*, 275 Ga. 458 (2002) ................................................................27

*E & T Realty v. Strickland*, 830 F.2d 1107 (11th Cir. 1987).................................13

*Edwards v. Balisok*, 520 U.S. 641 (1997)..............................................................56

*Eggar v. City of Livingston*, 40 F.3d 312 (9th Cir. 1994).................................59, 60

*Enterprise v. City Bd. of Educ. v. C.P.*, 698 So.2d 131 (Ala. Civ. App. 1996).......67

*Enwonwu v. Commonwealth Superior Court*, 2012 U.S. Dist. LEXIS 68192, 2012

   WL 1802056 (D. Mass. May 16, 2012)..............................................................23

*Ex Parte Milburn*, 34 U.S. 704 (1835) .................................................................27

*F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307 (1993)..........................................42

*Familias Unidas v. Briscoe*, 619 F.2d 391 (5th Cir. 1980) .....................................59

*Farrow v. Lipetzky*, No. 12-cv-06495-JCS, 2013 U.S. Dist. LEXIS 65824 (N.D. Cal. May 8, 2013) ...............................................................................41, 52

*Fields v. Henry Cnty.*, 701 F.3d 180 (6th Cir. 2012)....................................34, 52

*Forsyth Cnty. v. U.S. Army Corps of Eng'rs*, 633 F.3d 1032 (11th Cir. 2011)...6, 12

*Gadsby v. American Golf Corp. of Cal.*, 557 Fed. App'x 837 (11th Cir. 2014) .....61

*Gary v. City of Warner Robins, Ga.*, 311 F.3d 1334 (11th Cir. 2002)........37, 41, 42

*Glenn v. City of Columbus*, 75 Fed. App'x 983 (5th Cir. 2003) .............................34

*Griffin v. Illinois,* 351 U.S. 12 (1956).....................................................................47

*Harris v. City of Austin*, 1:15-cv-00956-SS, 2016 U.S. Dist. LEXIS 33694 (W.D. Tex. March 16, 2016) ....................................................................................58

*Harris v. Gee*, No. 8:12-cv-790-T-30AEP, 2012 WL 3156589 (M.D. Fla. Aug. 3, 2012) ...............................................................................................................23

*Harris v. McRae*, 448 U.S. 297 (1980)........................................................38, 39, 46

*Haves v. City of Miami*, 52 F.3d 918 (11th Cir. 1995) ...........................................42

*Heck v. Humphrey*, 512 U.S. 477 (1994).................................................................56

*Hernandez v. Carbone*, 567 F.Supp.2d 320 (D. Conn. 2008) ................................23

*Hernandez v. State*, 294 Ga. App. 289 (1990).............................................27, 28, 29

*Herzog v. U.S.*, 75 S.Ct. 349 (1955) ........................................................................26

viii

*Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999) ...............................64

*Holder v. Town of Newton*, No. 08-cv-197-JL, 2010 WL 432357 (D.N.H. Feb. 3, 2010) ..............................................................................................52, 53, 54

*Hollon v. Mathis Indep. Sch. Dist.*, 491 F.2d 92 (5th Cir. 1974) ...........................64

*Hopkins v. Bradley Cnty., Tenn.*, 338 S.W.3d 529 (Tenn. Ct. App. 2010) .......53, 54

*Hudson v. Int'l Computer Negotiations, Inc.*, 499 F.3d 1252 (11th Cir. 2007) ......25

*Hughes v. Att'y Gen. of Fla.*, 377 F.3d 1258 (11th Cir. 2004)................................21

*J.A. ex rel. Swain v. Talladega Bd. of Educ.*, 41 F.Supp.3d 1302 (N.D. Ala. 2014) ................................................................................................................67

*Joel v. City of Orlando*, 232 F.3d 1353 (11th Cir. 2000) .....................41, 42, 45, 46

*Johnson v. Moore*, 958 F.2d 92 (5th Cir. 1992) .....................................................59

*Jones v. Grimes*, 219 Ga. 585 (1964) .............................................................29, 60

*Joseph A. ex rel. Wolfe v. Ingram*, 275 F.3d 1253 (10th Cir. 2002)........................22

*Joyce v. City & Cnty. of San Francisco*, 846 F.Supp. 843 (N.D. Cal. 1994)..........46

*Kadrmas v. Dickinson Public Schs.*, 487 U.S. 450 (1988).....................................37

*Lazarus v. Baca*, 389 Fed. App'x 700 (9th Cir. 2010) ...........................................23

*Leach v. Santa Clara Cnty. Bd. of Supervisors*, No. 94-20438-JW, 1995 WL 7935 (N.D. Cal. Jan. 4, 1995)...........................................................................23

*Leib v. Hillsborough Cnty. Public Transp. Com'n*, 558 F.3d 1301 (11th Cir. 2009) ..............................................................................................................37

*Luckey v. Miller*, 976 F.2d 673 (11th Cir. 1992) .................................................21, 22

*Maher v. Roe*, 432 U.S. 464 (1977) ....................................................................38, 45

*Mastrian v. Hedman*, 326 F.2d 708 (8th Cir. 1964) ...........................................38, 39

*McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994) ....................................................13

*Medina v. California*, 505 U.S. 437 (1992) ...............................................................48

*Miami Beach Fed. Sav. & Loan Ass'n v. Callander*, 256 F.2d 410 (5th Cir. 1958) ..............................................................................................................12

*Michigan v. DeFillippo*, 443 U.S. 31 (1979) ............................................................61

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) .20, ............................................................................................................. 21

*Monell v. Dept. of Soc. Servs. of the City of New York,* 436 U.S. 658 (1978) .57, 58, ............................................................................................................. 60

*Mounkes v. Conklin*, 922 F.Supp. 1501 (D. Kan. 1996) .........................................23

*Mudd v. Busse*, 437 F.Supp. 505 (N.D. Ind. 1977) .................................................23

*Myers v. St. Lawrence*, 289 Ga. 240 (2011) ...........................................................26

*Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283 (11th Cir. 1990) .........................................................................64

x

*New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345 (1977)......................62

*Nordlinger v. Hahn*, 505 U.S. 1 (1992) ....................................................42

*Nowaczyk v. State of N.H.*, 882 F.Supp. 18 (D.N.H. 1995)......................................39

*Nunnelley v. Douglas Cnty.*, 622 F.Supp. 124 (D. Nev. 1985) ...............................38

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ......................................................21, 22, 68

*Ortwein v. Schwab*, 410 U.S. 656 (1973) ................................................................38

*Panama City Med. Diagnostic Ltd. v. Williams*, 13 F.3d 1541 (11th Cir. 1994)....42

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) .............................................58

*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987) ......................................................22

*Perez v. Ledesma*, 401 U.S. 82 (1971) ......................................................23

*Personnel Adm'r of Mass v. Feeney*, 442 U.S. 256 (1979) ......................................46

*Planned Parenthood v. Casey*, 505 U.S. 833 (1992).................................................25

*Preiser v. Rodriguez*, 411 U.S. 475 (1973).............................................................56

*Pugh v. Rainwater*, 572 F.2d 1053 (5th Cir. 1978) ..........................................30, 31

*Pullin v. Dorsey*, 271 Ga. 882 (2000)....................................................................60

*Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313 (11th Cir.

    2005) ...................................................................................................................49

*Redner v. Citrus Cnty., Fla.*, 919 F.2d 646 (11th Cir. 1990)..................................20

*Restigouche, Inc. v. Town of Jupiter*, 59 F.3d 1208 (11th Cir. 1995) ....................41

*Roberts v. State*, 32 Ga. App. 339 (1924)...................................................................27

*Robinson v. Hughes*, No. 1:11CV841-TMH, 2012 WL 255759 (M.D. Ala. Jan. 5. 2012).......................................................................................................................20

*Samuels v. Mackell*, 401 U.S. 66 (1971)..................................................................20

*San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1 (1973)..............................38

*Scalpi v. Town of East Fishkill*, 14-cv-2126(KMK), 2016 U.S. Dist. LEXIS 24530, 27 n.11 (S.D.N.Y. Feb. 29, 2016).......................................................................52

*Schilb v. Kuebel*, 404 U.S. 357 (1971) ....................................................................26

*Schrier v. Univ. of Co.*, 427 F.3d 1253 (10th Cir. 2005).........................................12

*Siegel v. LePore*, 234 F.3d 1163 (11th Cir. 2000)..............................................12, 64

*Snyder v. Massachusetts*, 291 U.S. 97 (1934) .........................................................40

*Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250 (11th Cir. 2005)........24, 25

*Speiser v. Randall*, 357 U.S. 513 (1958) .................................................................49

*Spencer v. Texas*, 385 U.S. 554 (1967)....................................................................49

*Springfield, Mass. v. Kibbe*, 480 U.S. 257 (1987)...................................................58

*Stack v. Boyle*, 342 U.S. 1 (1951) ......................................................................27, 44

*Strickland v. Alexander*, 772 F.3d 876 (11th Cir. 2014) .........................................19

*Suggs v. Brannon*, 804 F.2d 274 (4th Cir. 1986).....................................................21

*Tate v. Hartsville/Trousdale Cnty.*, No. 3:09-0201, 2010 WL 4054141 (M.D. Tenn. Oct. 14, 2010) ...................................................................................34, 43, 52, 55

*Tate v. Short,* 401 U.S. 395 (1971).................................................................46, 57

*Terrell v. City of El Paso*, 481 F.Supp.2d 757 (W.D. Tex. 2007).........34, 35, 36, 55

*The News-Journal Corp. v. Foxman*, 939 F.2d 1499 (11th Cir. 1991) ...................23

*Thornburgh v. Am. College of Obstetrics & Gynecologists*, 476 U.S. 747 (1992).25

*Turner v. Rogers*, 564 U.S. 431 (2011). ..........................................................10, 54

*U.S. v. Abrahams*, 575 F.2d 3 (1st Cir. 1978).........................................................39

*U.S. v. Beaman*, 631 F.2d 85 (6th Cir. 1980) ........................................................38

*U.S. v. Carolene Prods. Co.*, 304 U.S. 144 (1938)..................................................42

*U.S. v. Diaz*, 811 F.2d 1412 (11th Cir. 1987).........................................................27

*U.S. v. Gotay*, 609 F.Supp. 156 (S.D.N.Y. 1985)..............................................44, 45

*U.S. v. James*, 674 F.2d 886 (11th Cir. 1982).........................................................28

*U.S. v. Melendez-Carrion*, 790 F.2d 984 (2d Cir. 1986) ........................................39

*U.S. v. Salerno*, 481 U.S. 739 (1987) .....................................................27, 39, 40, 52

*U.S. v. Wong-Alvarez*, 779 F.2d 583 (11th Cir. 1985).......................................44, 45

*Wallace v. Kern*, 520 F.2d 400 (2d Cir. 1975) .......................................................21

*Washington v. Davis*, 426 U.S. 229 (1976) ............................................................45

*Watson v. Fla. Judicial Qualifications Com'n*, 618 Fed. App'x 487 (11th Cir. 2015) ......................................................................................................22

*Welchen v. Harris & Cnty. of Sacramento*, 2:16-cv-185-TLN-KJN (E.D. Cal. 2016) ...................................................................................................8, 15

*Whisenant v. City of Haltom City*, 106 Fed. App'x 915 (5th Cir. 2004)................57

*Wilkinson v. Dotson*, 544 U.S. 74 (2005) ................................................................56

*Williams v. Farrior*, 626 F.Supp. 983 (S.D. Miss. 1986)...................................50, 51

*Williams v. Illinois,* 399 U.S. 235 (1970) ...............................................................46

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)................................12, 63

*Woods v. City of Michigan*, 940 F.2d 275 (7th Cir. 1991) ......................................36

*Younger v. Harris*, 401 U.S. 37 (1971)........................................... 19, 20, 21, 22, 23

*Zepeda v. U.S. I.N.S.*, 753 F.2d 719 (9th Cir. 1983).................................................64

## Statutes

18 U.S.C. § 3142.....................................................................................................44

28 U.S.C. § 1291.....................................................................................................xv

28 U.S.C. § 1331.....................................................................................................xv

28 U.S.C.A. § 2403.................................................................................................19

42 U.S.C. § 1983.................................................................................................xv, 24

O.C.G.A. § 9-4-7....................................................................................................19

O.C.G.A. § 17-2-2.........................................................................4, 53

O.C.G.A. § 17-6-1.......................... 11, 16, 17, 18, 19, 25, 26, 28, 29, 31, 32, 43, 69

O.C.G.A. § 17-6-2.............................................................................16

O.C.G.A. § 17-6-4.............................................................................16

O.C.G.A. § 33-32-1...........................................................................60

O.C.G.A. § 40-6-95.............................................................................2

O.C.G.A. § 40-6-391.........................................................................65

O.C.G.A. § 40-13-20.........................................................................60

## Other Authorities

Equal Justice Under Law, *Ending the American Money Bail System*,

   http:equaljusticeunderlaw.org/wp/current-cases/ending-the-american-money-

   bail-system ..................................................................................7

Paul Elias, Lawsuits seek to abolish country's bail bond system, ASSOCIATED

   PRESS (SAN FRANCISCO), Dec. 27, 2015,

   http://bigstory.ap.org/article/ad701348798740ad87979d0a38f5f78d/lawsuits-

   seek-abolish-countys-bail-bond-system ..............................................7

## Rules

Fed. R. Civ. P. 5.1 ..........................................................................19

Georgia Uniform Superior Court Rule 26.1 .......................................4, 53

Georgia Uniform Municipal Court Rule 18.3(1)-(4)...............................................29

## STATEMENT OF JURISDICTION

The District Court had original jurisdiction under 28 U.S.C. § 1331 because this action arose under the U.S. Constitution and federal law. Specifically, Plaintiff alleged claims under 42 U.S.C. § 1983 for alleged violations of his constitutional rights.

This Court has jurisdiction to hear this appeal under 28 U.S.C. § 1291. The District Court entered a final Order granting Plaintiff's Motion for a Preliminary Injunction.[1] The City of Calhoun timely filed a Notice of Appeal of the District Court's Order.[2]

_____

[1] (Doc. 40.)
[2] (Doc. 42.)

xvii

## STATEMENT OF THE ISSUES

1.    Did the District Court err in holding that Plaintiff is likely to succeed on his unspecified Fourteenth Amendment challenge to the City of Calhoun's Municipal Court's use of a statutorily-approved secured monetary bail schedule in granting the preliminary injunction?

2.    Did the District Court err in holding that the Standing Bail Order of the Municipal Court of the City of Calhoun violates the Equal Protection Clause and is therefore unconstitutional?

3.    Did the District Court err in holding that the use of a statutorily-approved secured monetary bail schedule violates the Equal Protection Clause and is therefore unconstitutional?

4.    Did the District Court err in holding that, in order to show a likelihood of success on the merits, Plaintiff is not required to directly challenge the constitutionality of O.C.G.A. § 17-6-1 or bail schedules *per se*, thus negating the need for the Attorney General of the State of Georgia to intervene?

5.    Did the District Court err in holding that Plaintiff can satisfy the remaining preliminary injunction factors as a matter of law?

## STATEMENT OF THE CASE

I.    **STATEMENT OF THE FACTS.**

   A.    **Plaintiff's Arrest and Municipal Court Proceedings.**

On Thursday, September 3, 2015, Officer Heath Everett responded to a dispatch by the Gordon County Emergency 911 Center regarding an apparent intoxicated individual walking in the roadway of Georgia State Route 53 Spur, a five-lane roadway.[3]  Upon arrival, Officer Everett found Plaintiff Maurice Walker, who appeared to be stumbling as he was walking, and placed him in custody for pedestrian under the influence in violation of O.C.G.A. § 40-6-95, and transported him to Gordon County Jail for booking and processing.[4]

Immediately following the Labor Day holiday, Plaintiff filed suit on Tuesday, September 8, 2015.[5]  He was released from custody on his own recognizance on Wednesday, September 9, 2015, by agreement of counsel.[6] Arraignment was scheduled for Monday, October 12, 2015, at 5:00 P.M.[7]

---

[3] (Affidavit of Samuel Heath Everett ¶¶ 2-4 (Appendix Tab 1).)
[4] (*Id.* ¶ 6.)
[5] (*See* Doc. 1.)
[6] (Prisoner Release Authorization (Appendix Tab 2).)
[7] (Calhoun Municipal Court Ticket Information Sheet (Appendix Tab 3).)

On Monday, October 12, 2015, a monetary bond in the amount of $160.00 was tendered electronically to the Municipal Court through an online provider.[8] Neither Plaintiff nor his counsel of record appeared for his arraignment and the case was disposed of on Monday, October 19, 2015, by entry of a "bond forfeiture."[9] The criminal case was closed on Tuesday, October 20, 2015.[10]

### B.    Standing Bail Order of the Municipal Court.

On November 23, 2015, the Chief Judge of the Municipal Court for the City of Calhoun, Georgia entered a "Standing Order Regarding Pre-Trial Appearance, Establishment of Bonds in Advance of Initial Appearance Pursuant to State Law and Individualized Indigency Determinations" (the "Standing Bail Order").[11] The Standing Bail Order re-adopted and re-affirmed the written and established schedule of secured bail which existed at the time of Plaintiff's arrest.[12] Additionally, the Standing Bail Order provided that the Municipal Court would now include all forms of bail authorized by the Georgia General Assembly.[13]

Part three of the Standing Bail Order provides that persons who have not obtained release pursuant to the secured bail schedule are to be brought for a "first

---

[8] (Affidavit of Matthew Chad Silvers ¶ 3 (Appendix Tab 4).)
[9] (*See* Appendix Tab  3.)
[10] (*See id.*)
[11] (Standing Bail Order (Appendix Tab 5).)
[12] (*Id.* at 3.)
[13] (*Id.*)

appearance" under Georgia Uniform Superior Court Rule 26.1 no later than 48 hours from their arrest.[14]   At the first appearance, the Municipal Court Judge will make an individualized factual determination whether the accused qualifies as an "indigent person" under O.C.G.A. § 17-2-2(6)(A).[15]   The guidelines for determining indigency shall be "100 percent of the federal poverty guidelines."[16] Finally, the Standing Bail Order employs a release on a "recognizance bond" if the accused is either an indigent person or has not been provided with a timely first appearance.[17]

> ### C.   Plaintiff has Not Provided Facts to Support His Conclusion that He is Indigent.

Plaintiff's status as an indigent person is conclusorily alleged through his *ipse-dixit* affidavit,[18] with no facts or objective information to determine that he is in fact "indigent."

## II.   COURSE OF PROCEEDINGS.

Plaintiff alleges that he was wrongfully detained in violation of his constitutional rights as the result of the City's bail practice, which follows the

---

[14] (*Id.* at 5.)

[15] (*Id.*)

[16] (*Id.* at 6.)

[17] (*Id.*)

[18] (*See* Affidavit of Plaintiff (Doc. 1-2).)

-4-

procedures set out in the Georgia Code.[19]   Plaintiff filed his Complaint on September 8, 2015, challenging the City of Calhoun's use of a master bail schedule, which is authorized by O.C.G.A. § 17-6-1(f)(1).[20]   The same day, Plaintiff filed a Motion for Temporary Restraining Order or, in the Alternative, for Preliminary Injunction.[21]   The following day, Plaintiff filed a Motion to Certify Class.[22]   On November 11, 2015, the City filed a Motion to Dismiss for failure to State a Claim, or in the alternative, Motion for More Definite Statement.[23]

On December 2, 2015, the District Court denied the City's Motion to Dismiss for failure to State a Claim, or in the alternative, Motion for More Definite Statement.[24]   On January 28, 2016, the District Court entered separate Orders granting Plaintiff's Motion for Preliminary Injunction and Motion to Certify Class.[25]  This appeal followed.[26]

---

[19] (Doc. 1, ¶ 2; Doc. 7 at 1-2.)
[20] (*See* Doc. 1.)
[21] (Docs. 4, 7.)
[22] (Doc. 10.)
[23] (Doc. 22.)
[24] (Doc. 28.)
[25] (Docs. 40, 41.)
[26] (Doc. 42.)

## STANDARD OF REVIEW

This Court ordinarily reviews the grant of a preliminary injunction for abuse of discretion.[27]    However, the district court's legal conclusions are reviewed *de novo*.[28]    Moreover, any "constitutional facts" are likewise reviewed *de novo*.[29] While the District Court discussed the four factors necessary to obtain a preliminary injunction, its decision as to the substantial likelihood of success was based upon its interpretation and application of constitutional law.    Because the basis of the District Court's decision is an interpretation of constitutional law, this Court's review is *de novo*.[30]

---

[27] *Forysth Cnty. v. U.S. Army Corps of Eng'rs*, 633 F.3d 1032, 1039 (11th Cir. 2011).

[28] *Id.*

[29] *Bloedorn v. Grube*, 631 F.3d 1218, 1229-30 (11th Cir. 2011).

[30] *See Forsyth Cnty.*, 633 F.3d at 1039; *Bloedorn*, 631 F.3d at 1229-30.

## SUMMARY OF ARGUMENT

This lawsuit is one of numerous similar actions filed throughout the country by Washington, D.C.-based Equal Justice Under Law, whose stated objective is to end the cash-bail system in this country.[31]  The *secured* bail schedule utilized by the City of Calhoun's Municipal Court Judge, which Plaintiff now challenges, is authorized by Georgia law and has been upheld by appellate courts at both the state and federal levels.  The relief sought by Plaintiff – a system of release based upon *unsecured* personal recognizance bonds – is not authorized or even contemplated by Georgia law.

In his Complaint, Plaintiff vaguely alleged that his due-process and equal-protection constitutional rights had been violated.  Plaintiff, however, has never specified what cause of action he is traveling under.  Then, the District Court perpetuated Plaintiff's ambiguousness by finding a likelihood of success on the

---

[31] *See* Equal Justice Under Law, *Ending the American Money Bail System*, http:equaljusticeunderlaw.org/wp/current-cases/ending-the-american-money-bail-system/; "Telfeyan [co-founder of Equal Justice Under Law] said a win … could add momentum to the center's goal to rid the country of the cash bail system." Paul Elias, *Lawsuits seek to abolish country's bail bond system*, ASSOCIATED PRESS (SAN FRANCISCO), Dec. 27, 2015, http://bigstory.ap.org/article/ad701348798740ad87979d0a38f5f78d/lawsuits-seek-abolish-countys-bail-bond-system.

merits without even determining what Plaintiff's cause of action actually is although the City asked the District Court to require Plaintiff to at least identify his cause or causes of action. The District Court refused to compel this. Instead, the District Court stated that the City could find out about Plaintiff's claims during discovery. But then the District Court found a substantial likelihood of success on the merits before the City could do so and entered the preliminary injunction only 13 days after the start of discovery.

The District Court's decision here stands in stark contrast to *Welchen v. Harris and County of Sacramento*,[32] which evaluated a nearly-verbatim complaint filed by Equal Justice Under Law. The *Welchen* court characterized Plaintiff's claims as nothing more than "freedom rhetoric" that "is not enough to overcome Plaintiff's failure to show an actual constitutional violation."[33]

Here, the City asked the District Court to require Plaintiff to state whether his "due process" claim was substantive, procedural, or both. The District Court refused. But as this Court is well aware, if Plaintiff is alleging a substantive due process violation, that claim fails and would be properly dismissed under Rule 12(b)(6) because Plaintiff's claim does not relate to the matters allowed under substantive due process – marriage, family, procreation, and the right to bodily

---

[32] 2:16-cv-185-TLN-KJN (E.D. Cal. 2016).
[33] *Id.* (Doc. 12 at 4.)

integrity.  Therefore, Plaintiff cannot challenge the Standing Bail Order under the Fourteenth Amendment, but must do so directly under the Eighth Amendment.

Additionally, the District Court's Order found that "[a]ny bail or bond scheme that mandates payment of pre-fixed amounts for different offenses to obtain pretrial release, without any consideration of indigence or other factors, violates the Equal Protection Clause."[34]  The District Court cited no authority for this bold proposition, and the City has not found a single case that supports it.

More fundamentally, the District Court decided that Plaintiff had a substantial likelihood of success on the merits without conducting a constitutional analysis of the Georgia statute that expressly authorizes the Standing Bail Order. In fact, the City argued that for Plaintiff to succeed on the merits there must be a finding that the enabling statute was unconstitutional.  In other words, so long as the Georgia statute is constitutional, Plaintiff cannot succeed on the merits.   But the District Court avoided that exercise altogether.

Moreover, the Standing Bail Order includes provisions for the consideration of an "indigent person" and his ability to post bail, utilizing the federal poverty guidelines.  The Supreme Court has provided similar factors for consideration of

---

[34] (Doc. 40 at 49.)

an individual being imprisoned for non-payment of court-ordered child support obligations.[35]

Plaintiff cannot prove a likelihood of success on the merits because the Standing Bail Order does not discriminate based upon wealth, but rather draws distinctions based upon the seriousness of the charged offense. Alternatively, Plaintiff's claims for alleged Equal Protection and Due Process violations fail under rational-basis review because wealth is not a suspect class and the Fourteenth Amendment does not provide an absolute entitlement to pretrial release. The City has a legitimate, rational governmental purpose for utilizing a secured bond schedule in accordance with Georgia law. Additionally, the District Court also erred by not dismissing Plaintiff's claims as barred by *Younger* abstention.

Statutorily-approved secured bond schedules, such as the one used by the City, have been found constitutional when challenged under Section 1983. Because all constitutional safeguards, including, but not limited to, an opportunity at a hearing for the defendant to provide the court with information regarding his or her ability to pay, are provided for in the Standing Bail Order, it passes rational-basis review.

---

[35] *See Turner v. Rogers*, 564 U.S. 431 (2011).

In short, the Standing Bail Order complies with O.C.G.A. § 17-6-1(f)(1). But the District Court found the Standing Bail Order unconstitutional without evaluating the constitutionality of O.C.G.A. § 17-6-1(f)(1). Accordingly, this Court should evaluate the constitutionality of O.C.G.A. § 17-6-1(f)(1) in order to determine a substantial likelihood of success on the merits.

The District Court erred by holding that Plaintiff is likely to succeed on his Fourteenth Amendment claims and granting the preliminary injunction. The District Court failed to conduct any substantive Equal Protection analysis despite its sweeping finding that the Standing Bail Order was unconstitutional. The District Court also summarily dismissed the City's argument that Plaintiff was required to challenge the constitutionality of O.C.G.A. § 17-6-1(f)(1), which challenge would necessitate the joinder of the Attorney General of the State of Georgia, despite Plaintiff's repeated request that the District Court end the monetary bail system expressly provided for by Georgia law. Accordingly, this Court should evaluate the constitutionality of O.C.G.A. § 17-6-1(f)(1), find that it is in fact constitutional, and therefore conclude that Plaintiff cannot prove a constitutional violation.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right."[36]  In seeking one, a plaintiff "must establish that (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest."[37]  Because a "preliminary injunction is an extraordinary and drastic remedy, it is not to be granted until the movant clearly carries the burden of persuasion as to the four prerequisites."[38]

When the moving party is seeking to have the opposing party perform an affirmative act, the burden is even higher: "A mandatory injunction . . . especially at the preliminary stage of proceedings, should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party."[39]

---

[36] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).

[37] *Forsyth Cnty.*, 633 F.3d at 1039.

[38] *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994).

[39] *Miami Beach Fed. Sav. & Loan Ass'n v. Callander*, 256 F.2d 410, 415 (5th Cir. 1958); *Schrier v. Univ. of Co.*, 427 F.3d 1253, 1259 (10th Cir. 2005) (when seeking to alter the status quo, preliminary injunction is disfavored and higher level of scrutiny must apply).

-12-

## ARGUMENT AND CITATION OF AUTHORITY

I.    **THE DISTRICT COURT'S ORDER GRANTING THE PRELIMINARY INJUNCTION SHOULD BE REVERSED UNDER PROPER CONSTITUTIONAL ANALYSIS.**

   A.    **Because Plaintiff Failed to Articulate a Claim, the District Court Erred in Finding that He is Likely to Succeed on the Merits.**

Plaintiff failed to articulate a cognizable claim for relief in any pleading, and thus, the District Court could not properly find that Plaintiff is likely to succeed on the merits of his alleged Fourteenth Amendment claim.[40] In Plaintiff's Complaint, the words "Due Process" and "Equal Protection" appear in only two paragraphs.[41] It is unclear whether Plaintiff attempts to bring a Section 1983 claim for (1) either the substantive or procedural types of violations of the Due Process Clause of the Fourteenth Amendment; (2) one of the three types of violations of the Equal Protection Clause of the Fourteenth Amendment; or (3) violation of both the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment.[42]

---

[40] (*See* Docs. 1; 4; 7; 34.); *Anderson v. Dist. Bd. of Trustees Cent. Fla. Comm.*, 77 F.3d 364, 366 (11th Cir. 1996) (a defendant faced with an incomprehensible complaint "is not expected to frame a responsive pleading," but is expected to move the court to require plaintiff to file a more definite statement).

[41] (Doc. 1 ¶¶ 35, 47.)

[42] *See McKinney v. Pate*, 20 F.3d 1550, 1556-61 (11th Cir. 1994) (recognizing two types of Due Process claims); *E & T Realty v. Strickland*, 830 F.2d 1107, 1112 n.5 (11th Cir. 1987) (recognizing three broad categories of Equal Protection claims each with different elements and standards of review).

In reviewing the District Court's Order granting the preliminary injunction, it is apparent that neither the City nor the District Court has an understanding as to which constitutional theory Plaintiff bases his claims. The District Court's one-sentence holding, finding the use of a bail schedule unconstitutional, sheds no light on what type of Equal Protection claim Plaintiff is actually asserting.[43] Notably, the District Court failed to conduct any actual Equal Protection analysis of the use of bail schedules, the Standing Bail Order, or the enabling Georgia statute itself.[44] The District Court did not address any alleged Due Process violations.[45]

The District Court found that Plaintiff showed a likelihood of success on the merits, despite Plaintiff never having articulated a precise legal challenge or the relief sought.[46] The District Court's Order baldly contrasts with *Buffin v. City and*

---

[43] (Doc. 40 at 49.)

[44] (*See generally id.*)

[45] (*Id.*)

[46] The City is not directly appealing the Court's Order denying its Motion to Dismiss, or in the alternative, Motion for More Definite Statement. However, this Court may exercise its pendent appellate jurisdiction over the District Court's Orders denying the City's Motion to Dismiss (Doc. 28) and/or granting Plaintiff's Motion to Certify Class (Doc. 41) should it find that they are inextricably intertwined or necessary to ensure meaningful review of the Order Granting Plaintiff's Motion for Preliminary Injunction. (*See* Appellant City of Calhoun, Georgia's Response Brief to Appellee's Corrected Motion to Dismiss Appeal in Part, filed March 21, 2016.) The Motion to Dismiss Appeal in Part was carried with the case. (*See* May 16, 2016, Order.)

*County. of San Francisco*,[47] another nearly-identical case filed by Equal Justice Under Law, in which the district court *denied* Plaintiffs' motion for preliminary injunction, finding that the court "must be assured that the complaint articulates with sufficient clarity the relief sought against the City, the authority on which the Court may order such relief, and the authority under which defendants may afford the relief."[48]    In *Welchen*, the district court characterized Plaintiff's claims as nothing more than "freedom rhetoric" "replete with one-liner platitudes concerning equal justice and wealth status" that "is not enough to overcome Plaintiff's failure to show an actual constitutional violation."[49]    There is nothing in the facts of the Complaint filed in this case to distinguish it from *Buffin* and *Welchen*.

Fundamentally, the District Court could not properly find that Plaintiff is likely to succeed on the merits of his claim because Plaintiff's precise legal challenges are unknown.    Likewise, the District Court cannot conduct any meaningful constitutional analysis because Plaintiff's pleadings do not articulate the legal challenge made or the relief sought.    Accordingly, this Court should

---

[47] *Buffin v. City & County of San Francisco,* 4:15-cv-04959-YGR (N.D. Cal. 2015).

[48] (*Id.* at Doc. 55 at 10); *see also Welchen*, 2:16-cv-185-TLN-KJN (Doc. 12 at 3) (in nearly identical case filed by Equal Justice Under Law, court denied motion for temporary restraining order finding "Plaintiff's briefing makes overarching legal conclusions but fails to provide … facts that would enable the Court to grant the relief sought by Plaintiff.").

[49] 2:16-cv-185-TLN-KJN, (Doc. 12 at 3-4).

reverse the Order of the District Court, and find that Plaintiff has not shown a substantial likelihood of establishing a constitutional violation.

**B.    The District Court Erred by Not Conducting Any Constitutional Analysis of O.C.G.A. § 17-6-1(f).**

The City at all times complied with the Georgia statute[50] which expressly authorizes the use of bail schedules.  O.C.G.A. § 17-6-1(f)(1) provides that "the judge of any court of inquiry may by written order establish a schedule of bails and . . . a person charged with committing any offense shall be released from custody upon posting bail as fixed in the schedule."[51]  Any person required or permitted by law to give or post bond (or bail) as surety or security in a criminal matter may discharge the requirement by depositing cash in the amount of said bail.[52]  An accused may provide their driver's license as collateral for bail for certain specified offenses as provided for by O.C.G.A. § 17-6-2.  Notably absent from the statute, however, is any discussion or contemplation of what Plaintiff's counsel seeks, which is the use of *unsecured* recognizance bonds.[53]

The District Court held that "[a]ny bail or bond scheme that mandates payment of pre-fixed amounts for different offenses to obtain pretrial release,

---

[50] O.C.G.A. § 17-6-1(f)(1).
[51] *Id.*
[52] O.C.G.A. § 17-6-4(a).
[53] *See generally* O.C.G.A. § 17-6-1 *et seq.*

without any consideration of indigence or other factors, violates the Equal Protection Clause."[54] O.C.G.A. § 17-6-1 *et seq.* however, does not mandate or even discuss the requirements deemed necessary by the District Court.[55]

In finding the City's use of bail schedules and the Standing Bail Order unconstitutional, the District Court ordered the City to "comply with the Constitution" and "release any other misdemeanor arrestees in its custody, or who come into its custody, on their own recognizance or on an unsecured bond .... "[56] While the District Court was quick to find that the Standing Bail Order and the City's use of bail schedules were unconstitutional – despite being expressly provided for by Georgia law – the District Court offered no guidance how the City could comply with both its Order and Georgia law.[57]

The Standing Bail Order, and its prior iteration under which Plaintiff's bail was set, satisfies the requirements of O.C.G.A. § 17-6-1(f)(1). Thus, the City at all times complied with Georgia law. It logically follows that any claim concerning the City's use of bond schedules or the Standing Bail Order therefore necessarily requires challenging the constitutionality of the Georgia statute. Accordingly, the

---

[54] (Doc. 40 at 49.)
[55] *See* O.C.G.A. § 17-6-1 *et seq.*; (Doc. 40 at 49.)
[56] (Doc. 40 at 73.)
[57] (*See id.*); *but cf.* O.C.G.A. § 17-6-1(f)(1).

District Court erred by not conducting any constitutional analysis of O.C.G.A. § 17-6-1.

Plaintiff denies that he is directly challenging the use of a monetary bail schedule.[58] But whether Plaintiff intended to bring such a claim – and the sweep of his constitutional rhetoric certainly suggests as much – the District Court held that the City's monetary bail schedule is unconstitutional. It is understandable if the District Court was confused about the nature of Plaintiff's vague claims, but this Court now has an obligation to decide whether the District Court's injunction was correct, unless Plaintiff intends to concede error and stipulate to vacatur of the injunction. And the District Court plainly erred when it found it "abundantly clear" that Plaintiff was not *per se* challenging O.C.G.A. § 17-6-1 and summarily dismissed the City's argument that Plaintiff must, in fact, challenge O.C.G.A. § 17-6-1(f)(1), which provides for the use of a bail schedule.[59]

Georgia law specifically endorses the use of secured monetary bail schedules, like the City of Calhoun's.[60] Thus, for Plaintiff to actually win his challenge against the use of a bail schedule as adopted in the Standing Bail Order, Plaintiff must ask the Court to find O.C.G.A. § 17-6-1(f)(1) unconstitutional.

---

[58] (*See* Doc. 1, ¶ 44, Prayer for Relief ¶ b.)
[59] (Doc. 40 at 67.)
[60] *See* O.C.G.A. §17-6-1(f)(1).

Plaintiff, however, has neither added the State of Georgia as a party to this action, nor has he, to the City's knowledge, provided notice to the Attorney General of the State of Georgia.[61]    These steps are required under federal and state law. Accordingly, the District Court erred in finding that Plaintiff is not required to challenge the constitutionality of O.C.G.A. § 17-6-1(f)(1).

The City respectfully requests that this Court find O.C.G.A. § 17-6-1(f)(1) constitutional and, thus, that Plaintiff cannot establish a constitutional violation.

### C.    Plaintiff's Claims are Barred by *Younger* Abstention.

Federal courts typically refrain from intervening in ongoing state criminal proceedings.[62]  "Federal injunctions against state criminal statutes, either in their entirety or with respect to their separate and distinct prohibitions, are not to be granted as a matter of course, even if such statutes are unconstitutional."[63]   In a companion case issued the same day as *Younger*, the Supreme Court held that

---

[61] *See* 28 U.S.C.A. § 2403(b); O.C.G.A. § 9-4-7(c) (providing state procedure of notice to Attorney General when challenging the constitutionality of a statute). Even in the event this Court finds that this case does not satisfy the requirement of a statute affecting the "public interest," Georgia's Attorney General should be provided notice and invited to intervene in this case under the authority of *Strickland v. Alexander*, 772 F.3d 876, 889 (11th Cir. 2014) and Federal Rule of Civil Procedure 5.1.

[62] *Younger v. Harris*, 401 U.S. 37, 45 (1971) (noting that "the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions.").

[63] *Younger*, 401 U.S. at 46.

federal courts should also abstain from granting declaratory relief if *Younger* would have barred an injunction in these circumstances.[64]   While *Younger* itself involved a requested injunction of a pending criminal prosecution, this Court has recognized that the abstention doctrine also applies where state criminal proceedings have commenced against a federal plaintiff who seeks an injunction restraining only *future* criminal prosecutions.[65]   "Where vital state interests are involved, a federal court should abstain unless state law clearly bars the interposition of the constitutional claims."[66]

"[O]nly in the most unusual circumstances is a defendant entitled to have federal interposition by way of injunction or habeas corpus until after the jury comes in, judgment has been appealed from and the case concluded in the state courts."[67]   Abstention applies if three conditions are met: (1) the state proceedings are ongoing; (2) the proceedings implicate important state interests; and (3) the state proceedings provide an adequate opportunity to litigate the

---

[64] *Samuels v. Mackell*, 401 U.S. 66 (1971).

[65] *See Redner v. Citrus Cnty., Fla.*, 919 F.2d 646, 648-50 (11th Cir. 1990) (holding abstention appropriate, implicitly rejecting plaintiff's contention "that *Younger* does not apply because he requested no injunction of on-going state criminal proceedings, but instead requested an injunction of future prosecutions").

[66] *31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

[67] *Robinson v. Hughes*, No. 1:11CV841-TMH, 2012 WL 255759, *2 (M.D. Ala. Jan. 5. 2012) (citing *Drury v. Cox*, 457 F.2d 764, 764-65 (9th Cir. 1972)).

plaintiff's federal constitutional claims.[68]    The Supreme Court has applied this doctrine in bail proceedings.[69]

Courts assess whether the state court proceedings were ongoing at the time the federal action was filed, including whether the federal proceeding will interfere with an ongoing state court proceeding.[70]    In order to decide whether the federal proceeding would interfere with the state proceeding, the court looks to the relief requested and the effect it would have on the state proceeding.[71]

In *Luckey*, the plaintiffs asserted a class action on behalf of "all individuals who are or will in the future be adversely affected by the unconstitutional practices of the indigent defense system within Georgia."[72]    They sought injunctive relief to reform the indigent defense system.[73]    This Court applied the reasoning of *O'Shea* that an injunction would disrupt the normal course of proceedings in the state

---

[68] *See Middlesex Cnty. Ethics Comm.*, 457 U.S. at 432; *Hughes v. Att'y Gen. of Fla.*, 377 F.3d 1258 (11th Cir. 2004).

[69] *O'Shea v. Littleton*, 414 U.S. 488, 491, 501 (1974); *Wallace v. Kern*, 520 F.2d 400, 405-06 (2d Cir. 1975); *Suggs v. Brannon*, 804 F.2d 274, 279 (4th Cir. 1986).

[70] *31 Foster Children*, 329 F.3d at 1275-76.

[71] *See O'Shea*, 414 U.S. at 499-502; *Luckey v. Miller*, 976 F.2d 673, 679 (11th Cir. 1992) (*Younger* and *O'Shea* require "focus on the likely result of an attempt to enforce an order of the nature sought here").

[72] *Luckey*, 976 F.2d at 676.

[73] *Id.*

courts via resort to the federal suit for determination of the claim *ab initio*.[74]   The

court found that although *Luckey* did not involve a direct termination of ongoing

state proceedings, and the plaintiff did not directly contest any single criminal

conviction or seek to restrain any individual prosecution, the injunctive relief

plaintiff sought would nevertheless have the effect of restraining every indigent

prosecution until the systematic improvements they wanted were in place.[75]   The

*Younger* doctrine, therefore, applied.[76]

The Supreme Court has instructed federal courts to assume that state

procedures will afford an opportunity for consideration of constitutional claims "in

the absence of unambiguous authority to the contrary."[77]   *Younger* abstention

applies to Section 1983 claims raising constitutional challenges relating to an

ongoing state proceeding.[78]   Federal courts have consistently applied the *Younger*

---

[74] *O'Shea*, 414 U.S. at 501.

[75] *31 Foster Children*, 329 F.3d at 1276 (citing *Luckey*, 976 F.2d at 677)).

[76] *Luckey*, 976 F.2d at 679; *see also Joseph A. ex rel. Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002) ("*Younger* governs whenever the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly.").

[77] *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987).

[78] *Watson v. Fla. Judicial Qualifications Com'n*, 618 Fed. App'x 487, 491 (11th Cir. 2015) (citing *Doby v. Strength*, 758 F.2d 1405, 1405-06 (11th Cir. 1985)); *Christman v. Crist*, 315 Fed. App'x 231, 231-32 (11th Cir. 1991).

doctrine where, as here, a criminal defendant challenges his bail determination under federal law.[79]

Plaintiff's claims fall squarely within *Younger*.[80]  The state court criminal proceeding was ongoing when suit was filed, the state proceeding implicated important state interests, specifically criminal law enforcement and the use of a secured monetary bail schedule as authorized under a state statute and caselaw interpreting that statute, and the proceeding provided a forum for Plaintiff to litigate his federal constitutional claims.

---

[79] *See O'Shea*, 414 U.S. at 501 (proceedings to determine bail are properly subject to *Younger* abstention); *Harris v. Gee*, No. 8:12-cv-790-T-30AEP, 2012 WL 3156589, *1 (M.D. Fla. Aug. 3, 2012); *Lazarus v. Baca*, 389 Fed. App'x 700 (9th Cir. 2010); *Leach v. Santa Clara Cnty. Bd. of Supervisors*, No. 94-20438-JW, 1995 WL 7935 (N.D. Cal. Jan. 4, 1995); *Enwonwu v. Commonwealth Superior Court*, 2012 U.S. Dist. LEXIS 68192, 2012 WL 1802056 (D. Mass. May 16, 2012); *Mounkes v. Conklin*, 922 F.Supp. 1501 (D. Kan. 1996) (holding that Section 1983 challenge to state bail bond was barred by *Younger*); *Mudd v. Busse*, 437 F.Supp. 505, 509-14 (N.D. Ind. 1977) (holding that class action challenge to state bail process under Section 1983 is barred by *Younger*); *Hernandez v. Carbone*, 567 F.Supp.2d 320, 332 (D. Conn. 2008) (abstaining under *Younger*, noting that "the relief [plaintiff] seeks – forbidding state courts to impose money bail or a surety bond whenever a defendant is indigent and monitoring the state courts to ensure that minorities are not disfavored in the setting of bail – would intrude substantially into pending and future criminal cases").

[80] The "extraordinary circumstances" exception to abstention does not apply.  Only in cases of proven harassment or prosecutions undertaken by state officials in bad faith and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal intervention in state criminal proceedings appropriate. *Perez v. Ledesma*, 401 U.S. 82 (1971).

Moreover, where *Younger* abstention applies in a declaratory or injunctive relief action, the district court may not retain jurisdiction, and should dismiss the case.[81]   Accordingly, the District Court erred in not dismissing Plaintiff's claims.

## II.   PLAINTIFF CANNOT SUCCEED ON HIS FOURTEENTH AMENDMENT CLAIMS BECAUSE O.C.G.A. § 17-6-1 *ET SEQ.* IS CONSTITUTIONAL.

Plaintiff cannot show a likelihood of success on the merits, and therefore, cannot meet the stringent test for a preliminary injunction.   Plaintiff's Equal Protection claim fails because classifications based on wealth are reviewed under the rational-basis test, and Georgia's decision to allow the use of a secured bail schedule is rationally related to the legitimate government goal of assuring the presence of a defendant at trial.   Moreover, the use of bail schedules has survived prior Section 1983 challenges.   Additionally, Plaintiff cannot prevail under the deferential due process standard for assessing state criminal laws.

### A.   This Court May Reach a Decision on the Merits Because the Questions Raised are Purely Legal.

This Court has recognized that ordinarily "when an appeal is taken from the grant or denial of a preliminary injunction, the reviewing court will go no further into the merits than is necessary to decide the interlocutory appeal."[82]   However,

---

[81] *The News-Journal Corp. v. Foxman*, 939 F.2d 1499, 1510 (11th Cir. 1991).

[82] *Callaway v. Block*, 763 F.2d 1283, 1287 n.6 (11th Cir. 1985).

under certain circumstances, a decision on the merits is appropriate.[83]  This Court may review the underlying merits on an appeal from an order granting a preliminary injunction where the "district court's ruling rests solely on a premise as to the applicable rule of law, and the facts are established or of no controlling relevance."[84]  "That a court of appeals will ordinarily limit its review in a case of this kind to abuse of discretion is a rule of orderly judicial administration, not a limit on judicial power."[85]  Moreover, legal errors are a *per se* abuse of discretion.[86]

Because the questions raised in this matter are purely legal, this Court may reach a decision on the merits.  As this Court observed in *Solantic*: "[t]here is no point in remanding the case for the district court to go through the motions of

---

[83] *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1273 (11th Cir. 2005); *Burk v. Augusta-Richmond Cnty.*, 365 F.3d 1247, 1250 (11th Cir. 2004) (reaching the merits was appropriate since the appeal presented pure questions of law, and since this Court's disposition dictates the outcome of the underlying claim).

[84] *Id.* at 1274 (internal quotations omitted); *Thornburgh v. Am. College of Obstetrics & Gynecologists*, 476 U.S. 747, 757 (1992) (appellate review on the merits is proper if based solely on applicable rule of law), *overruled on other grounds by Planned Parenthood v. Casey*, 505 U.S. 833 (1992).

[85] *Thornburgh*, 476 U.S. at 757.

[86] *Hudson v. Int'l Computer Negotiations, Inc.*, 499 F.3d 1252, 1261 (11th Cir. 2007).

deciding the merits" of plaintiff's claims yet again, when this Court's opinion "compels the result to be reached."[87]

### B.  Georgia Law Rationally Provides for the Use of Bond Schedules.

As discussed *supra*, Georgia law expressly authorizes the use of bail schedules.[88]  Georgia law provides for an individualized bail determination in addition to the secured bail schedule.  The standards relevant to the purpose of assuring the presence of that defendant are in O.C.G.A. § 17-6-1(e).  In *Ayala v. State*,[89] the Supreme Court of Georgia stated:

> The trial court may release a person on bail if the court finds the person:
>
> (1)   Poses no significant risk of fleeing from the jurisdiction of the Court or failing to appear in court when required;
>
> (2)   Poses no significant threat or danger to any person, to the community, or to any property in the community;
>
> (3)   Poses no significant rise of committing any felony pending trial; and
>
> (4)   Poses no significant risk of intimidating witnesses or otherwise obstructing the administration of justice.[90]

---

[87] *Solantic*, 410 F.3d at 1274 (internal quotations omitted).
[88] O.C.G.A. § 17-6-1(f)(1).
[89] 262 Ga. 704 (1993).
[90] *Id.* at 705.

"The conjunctive 'and' indicates that the trial court may grant bail only if it finds that none of the four risks exists."[91]    Absent from Georgia law is any contemplation of the use of *unsecured* recognizance bonds.[92]

"Bail, of course, is basic to our system of law."[93]  "The trial court's foremost consideration when fixing the amount of bail should be the probability that the defendant, if freed, will appear at trial."[94]  "From the nature and the purpose of criminal proceedings," the authority is inherent in the courts

> to require respondents in criminal cases pending before it to give additional bail whenever in the judgment of that court, such additional bail be not excessive in amount.  The jurisdiction of the court to try the respondent upon the charge against him or to impose sentence upon him is dependent upon his presence before the court at the trial or at the time of sentence as the case may be.[95]

---

[91] *Myers v. St. Lawrence*, 289 Ga. 240, 241 (2011).

[92] *See generally* O.C.G.A. § 17-6-1 *et seq.* (emphasis added).

[93] *Schilb v. Kuebel*, 404 U.S. 357, 484 (1971); *Herzog v. U.S.*, 75 S.Ct. 349, 351 (1955).

[94] *Hernandez v. State*, 294 Ga. App. 289 (1990); *U.S. v. Salerno*, 481 U.S. 739, 753-54 (1987); *see also Stack v. Boyle*, 342 U.S. 1, 5 (1951) (fixing of bail must be based on standards relevant to purpose of assuring defendant's presence); *U.S. v. Diaz*, 811 F.2d 1412, 1413 (11th Cir. 1987); *Ex Parte Milburn*, 34 U.S. 704, 710 (1835) ("A recognizance of bail, in a criminal case, is taken to secure the due attendance of the party accused, to answer the indictment, and to submit to a trial, and the judgment of the court thereon."); *Corbett v. State*, 24 Ga. 391, 392 (1858) ("The end being ... security that the offender shall not escape.").

[95] *Roberts v. State*, 32 Ga. App. 339 (1924); *Stack*, 342 U.S. at 5.

"We are aware of no decision holding that an indigent defendant is entitled to have bail set which he can meet."[96]  "The defendant bears the initial burden of producing evidence that he does not pose a significant flight risk."[97]  Other factors that the court may consider include the defendant's ability to pay, the seriousness of the offense, and the defendant's character and reputation.[98]  "The amount of bail assessed is within the sole discretion of the trial court and will not be overturned absent a clear abuse of discretion."[99]

In actual practice, monetary bond ensures the defendant's presence at trial and prevents the avoidance of criminal responsibility.[100]  Plaintiff seeks to undermine the monetary bail system as established throughout the United States without any statutory or legal authority to do so.  A system of unsecured recognizance bonds, as sought by Plaintiff, greatly reduces the incentive for defendants to appear before the Municipal Court.

---

[96] *Chafin v. Jones*, 243 Ga. 267, 268 (1979).

[97] *Hernandez*, 294 Ga. App. at 289; *Dunn v. Edwards*, 275 Ga. 458 (2002); *Ayala*, 262 Ga. at 705.

[98] *Hernandez*, 294 Ga. App. at 289-90.

[99] *Id.* at 290; *U.S. v. James*, 674 F.2d 886, 891 (11th Cir. 1982) (the district court must therefore have the authority to make such orders he deems necessary to ensure the presence of the defendants at trial, and the government should be able to invoke that authority).

[100] *Clarke v. State*, 228 Ga. App. 219, 221 (1997).

Plaintiff incorrectly asserts that the bail schedules authorized by O.C.G.A. § 17-6-1 "shall include release on unsecured bail in misdemeanor cases."[101] Plaintiff cites no authority for this assertion. Instead, Plaintiff's unfounded position is merely Plaintiff's counsel's own interpretation of the statute and what counsel desires the statute to say rather than what it actually allows. While O.C.G.A. § 17-6-1(f)(i) permits release on one's recognizance, it does not provide for *unsecured* release, which is simply a promise to pay a set amount if he fails to appear. Nowhere in Title 17 is unsecured bail authorized.

Further, Uniform Municipal Court Rule 18.3 expressly contemplates four categories of bail: (1) cash; (2) property; (3) recognizance; and (4) professional.[102] While Rule 18.3 allows the municipal court to impose "specified and reasonable conditions," there is no contemplation of creating a new category of bail which Plaintiff now seeks to do.[103]

There is no support for Plaintiff's allegation that the bail schedule discriminates based on wealth. The preset amounts of the City's bail schedule are tied to the seriousness of the offense – the more serious the offense, the higher the bond amount – and comport with the statutory requirements of Georgia law.

---

[101] (Appellee's Reply in Support of Motion to Dismiss Appeal in Part at 9.)
[102] Georgia Uniform Municipal Court Rule 18.3(1)-(4).
[103] *Id.* at 18.3(4).

By demanding the implementation of a system of unsecured recognizance bonds, Plaintiff also seeks to strip Georgia courts of their discretion to set the amount of bail to be assessed in each case.[104]   As the Georgia Supreme Court has said, "[t]here are no hard and fast rules for determining what is reasonable bail and what is excessive bail.   The question must be determined according to the circumstances of each case."[105]   The Municipal Court of the City of Calhoun alone has the discretion to assess bail, including the use of the bail schedule as authorized pursuant to O.C.G.A. § 17-6-1(f).

### C.    Neither *Pugh* nor *Bearden* Holds that Secured Bail Schedules are Unconstitutional.

Both Plaintiff and the District Court rely on *Pugh v. Rainwater*[106] in support of the contention that imprisonment solely because of indigent status is invidious discrimination and not constitutionally permissible.[107]   If anything, though, *Pugh* stands for the *opposite* conclusion.   The *Pugh* court refused to invalidate a Florida pretrial bail system as facially unconstitutional.[108]   The court noted that a secured bail schedule rationally "provides speedy and convenient release for those who

---

[104] *Hernandez*, 294 Ga. App. at 290.
[105] *Jones v. Grimes*, 219 Ga. 585, 587 (1964).
[106] *Pugh v. Rainwater*, 572 F.2d 1053 (5th Cir. 1978).
[107] (*See generally*, Doc. 7; Doc. 40 at 51.)
[108] *Pugh*, 572 F.2d at 1059.

-30-

have no difficulty in meeting its requirements."[109]    Rather than focusing solely on the issue of equal protection, the court noted that "[s]ince the function of bail is limited, the fixing of bail for any individual defendant must be based upon the standards relevant to the purpose of assuring the presence of that defendant."[110] *Pugh* did not hold that bail schedules violate the Constitution.

*Pugh* demonstrates that Plaintiff does not possess a substantial likelihood of success on the merits because required constitutional protections are in fact provided by state law.    Georgia state law provides for an individualized bail determination in addition to the secured bail schedule.[111]    Thus, O.C.G.A. § 17-6-1(e) follows the edicts of *Pugh* that "all relevant factors be considered in determining 'what form of release is necessary to assure the defendant's appearance.'"[112]    Simply put, *Pugh* expressly endorses as constitutional secured bail schedules like the City's.

Likewise, Plaintiff's and the District Court's reliance on *Bearden v. Georgia*[113] is misplaced.    In *Bearden*, the government increased a convicted criminal's punishment because he could not afford a fine and restitution.    This is

---

[109] *Id.* at 1057.

[110] *Id.*

[111] *See* O.C.G.A. §§ 17-6-1(e), (f)(1).

[112] *See Pugh*, 572 F.2d at 1058.

[113] *Bearden v. Georgia*, 461 U.S. 660 (1983).

wholly distinguishable from the instant case. *Bearden* "recognized limits on the principle of protecting indigents in the criminal justice system."[114] *Bearden* set forth the method to determine which theory to apply: "we generally analyze the fairness of relations between the criminal defendant and the State under the Due Process Clause, while we approach the question of whether the State has invidiously denied one class of defendants a substantial benefit available to another class of defendants under the Equal Protection Clause."[115]

In *Bearden*, the indigent probationer did not automatically escape his responsibility to the State, but instead:

> We hold, therefore, that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment.[116]

Plaintiff should not be relieved from the requirement of having to attempt to make bail based solely upon an unverified assertion of indigency. Courts recognize the distinction between being indigent (the inability to pay) and being a

---

[114] *Id.* at 664.
[115] *Id.* at 665.
[116] *Id.* at 672.

-32-

defendant without the immediate means to provide a secured bail.[117]  Here, the

Standing Bail Order provides a process for the Municipal Court to determine

whether an accused claiming indigency has made "bona fide efforts to acquire the

resources" to obtain pretrial release.[118]  Plaintiff, however, seeks to have an

unsecured recognizance bond that is not authorized by the Georgia General

Assembly or O.C.G.A. § 17-6-1 *et seq.* and is not required by the Constitution.

With the due process protections of the Standing Bail Order, Plaintiff and the class

members are provided the requisite constitutional protections.

Both Plaintiff and the District Court have cited court-approved settlement

agreements entered in similarly-filed federal litigation brought by Equal Justice

Under Law.[119]  But there are a plethora of reasons why a given case is settled, aside

from the merits.  And one municipality's choice to capitulate is hardly evidence

that another city's *different* policies and procedures are unconstitutional.  Further,

all these other cases are factually distinguishable from the present case because

each municipality's bail schedule and state laws are different.  This Court is under

no obligation to consider the settlement agreements referenced by Plaintiff, and in

fact, they are not admissible pursuant to Federal Rule of Evidence 408.  For these

---

[117] *See id.* at 660, 668.

[118] *Id.* at 672.

[119] (*See* Doc. 7 at 6-7, 16-17; Doc. 40 at 52-53.)

reasons, Plaintiff cannot succeed on his Fourteenth Amendment claims and therefore the District Court erred in granting Plaintiff's Motion for Preliminary Injunction.

### D.    The Use of a Secured Monetary Bail Schedule is Constitutional.

The fact that bail is preset pursuant to a bond schedule, standing alone, does not amount to a constitutional violation.[120]

In *Terrell v. City of El Paso*, an arrestee sued the city and county, among others, asserting Section 1983 claims for violations of his First, Fourth, Fifth, and Fourteenth Amendment rights.[121]   Terrell argued that because the assistant district attorney set his bail pursuant to a bond schedule, the bail was *per se* excessive and violated his rights under the Eighth Amendment.[122]   Terrell did not however, argue that the amount of his bail, $1,000, was excessive.[123]

The court initially noted that Terrell's claim regarding the manner in which his bail was set "might be better framed as a due process violation but it would still

---

[120] *Fields v. Henry Cnty.*, 701 F.3d 180, 184 (6th Cir. 2012) (the mere use of bail schedule does not itself pose a constitutional problem); *Glenn v. City of Columbus*, 75 Fed. App'x 983 (5th Cir. 2003) (citing *Pugh*, 572 F.2d at 1057) (use of bond schedule does not violate the Excessive Bail or Due Process clauses); *Tate v. Hartsville/Trousdale Cnty.*, No. 3:09-0201, 2010 WL 4054141, *7 (M.D. Tenn. Oct. 14, 2010); *Terrell v. City of El Paso*, 481 F.Supp.2d 757 (W.D. Tex. 2007).
[121] *Terrell*, 481 F.Supp.2d 757.
[122] *Id.* at 765-66.
[123] *Id.* at 766.

fail under the facts of this case."[124]    The court conducted "exhaustive research regarding the constitutionality of bond schedules in § 1983 cases" and found only one case where a federal court found the use of a bond schedule to be unconstitutional.[125]    Ultimately, the court found no constitutional violation, as Terrell's bail was not excessive, and he could have received an individualized bail determination from a magistrate.[126]

In *Ackies v. Purdy*, the only case located by the *Terrell* court, plaintiffs brought a class action challenging Dade County's use of a master bond schedule in setting bond.[127]    Under the Dade County system, the booking officer at the county jail consulted a bond schedule to determine the amount of bond based upon the charges.[128]    If a defendant could not pay the bond, he would remain in jail for periods ranging from three days to three weeks or longer before being presented to a judge.[129]    Under these circumstances, the *Ackies* court found that the use of the schedule violated both procedural Due Process and the Equal Protection Clauses of the Fourteenth Amendment.[130]

---

[124] *Id.*

[125] *Id.*

[126] *Id.* at 767.

[127] *Ackies v. Purdy*, 322 F.Supp. 38, 40 (D.C. Fla. 1970).

[128] *Id.*

[129] *Id.*

[130] *Id.* at 41-42.

The *Terrell* court declined to follow *Ackies*, noting that despite the broad use of bond schedules across the country, it could find no opinions after *Ackies* holding the use of bond schedules unconstitutional, and no other courts having further developed the *Ackies* holding.[131] The *Ackies* decision was decided prior to the Supreme Court's holding in *Gerstein v. Pugh*,[132] and thus, the concerns in *Ackies* have been addressed.[133] "Clearly, there are greater procedural safeguards in place since the time of the *Ackies* holding to protect against extended detention without judicial review, the court's chief concern in *Ackies*."[134]

The Seventh Circuit criticized the *Ackies* opinion as going too far in its determination that setting bail from a master bail bond schedule without a prior hearing is a denial of due process.[135] The court stated that due process could require individualized bail determinations in certain situations, such as particularized challenges to the amount of bail, but that "[c]onstitutionality would depend on whether the bail amount listed on the schedule is excessive for a particular defendant accused of having committed a particular crime."[136]

---

[131] *Terrell*, 481 F.Supp.2d at 767.
[132] *Gerstein*, 420 U.S. at 114.
[133] *Terrell*, 481 F.Supp.2d at 767.
[134] *Id.*
[135] *Woods v. City of Michigan*, 940 F.2d 275, 285 (7th Cir. 1991) (concurring opinion).
[136] *Id.*

-36-

Plaintiff's bail of $160 cash bond or $320 property/surety bond was not excessive, nor has it been alleged to be. Under the holdings in *Terrell* and its progeny, the Standing Bail Order and the City's use of bail schedules are constitutional. Accordingly, Plaintiff has suffered no Fourteenth Amendment deprivation as the result of the City's use thereof.

### E.    Plaintiff's Claims are Subject to Rational-Basis Review Because Wealth-Based Classifications are Not "Suspect Classifications" and No Fundamental Right is at Issue.

The Equal Protection Clause requires the government to treat similarly-situated persons in a similar manner.[137] "When legislation classifies persons in such a way that they receive different treatment under the law, the degree of scrutiny the court applies depends upon the basis for the classification."[138] If a law treats individuals differently on the basis of a suspect classification, or if the law impinges on a fundamental right, it is subject to strict scrutiny.[139] Otherwise, the law need only have a rational basis – i.e., it need only be rationally related to a legitimate government purpose.[140]

---

[137] *Gary v. City of Warner Robins, Ga.*, 311 F.3d 1334, 1337 (11th Cir. 2002).
[138] *Id.* at 1337.
[139] *Leib v. Hillsborough Cnty. Public Transp. Com'n*, 558 F.3d 1301, 1306 (11th Cir. 2009).
[140] *Id.*

The United States Supreme Court has repeatedly held that classifications based on wealth alone are not suspect classifications.[141]  The Supreme Court has found that:

> An indigent woman desiring an abortion does not come within the limited category of disadvantaged classes so recognized by our cases. Nor does the fact that the impact of the regulation falls upon those who cannot pay lead to a different conclusion.  In a sense, every denial of welfare to an indigent creates a wealth classification as compared to nonindigents who are able to pay for the desired goods or services.[142]

The Supreme Court has never held that financial need alone identifies a suspect class for purposes of equal-protection analysis.[143]

Neither the Eighth nor the Fourteenth Amendments require that every individual charged with a state offense be given his liberty or bail pending trial.[144]

---

[141] *See, e.g., Kadrmas v. Dickinson Public Schs.*, 487 U.S. 450, 458 (1988) ("We have previously rejected the suggestion that statutes having different effects on the wealthy and the poor should on that account alone be subjected to strict equal protection scrutiny.") (citing *Harris v. McRae*, 448 U.S. 297, 322-23 (1980) (noting that poverty, standing alone, is not a suspect classification)); *Ortwein v. Schwab*, 410 U.S. 656, 660 (1973) (rejecting argument that filing fee discriminates against poor where no suspect classification such as race, nationality or alienage is present); *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 24 (1973) ("[A]t least where wealth is involved, the Equal Protection Clause does not require absolute equality or precisely equal advantages.").

[142] *Maher v. Roe*, 432 U.S. 464, 470-71 (1977).

[143] *Id.* at 471.

[144] *Mastrian v. Hedman*, 326 F.2d 708, 710 (8th Cir. 1964); *U.S. v. Beaman*, 631 F.2d 85, 86 (6th Cir. 1980) ("The right to bail prior to conviction under the Eighth

While bail is a valuable institution and the Eighth Amendment prohibits excessive bail, states and municipalities are not required to offer bail to every criminal defendant or for every criminal offense. Nor are governments required to administer their bail systems so that every accused will always be able to secure his liberty pending trial.[145]  Because there is no absolute right to bail, there is no fundamental right at issue.[146]

"The guarantee of equal protection … is not a source of substantive rights or liberties, but rather a right to be free from invidious discrimination in statutory classifications and other governmental activity."[147]  Thus, "where a statutory classification does not itself impinge on a right or liberty protected by the Constitution, the validity of classification must be sustained unless 'the classification rests on grounds wholly irrelevant to the achievement of [any legitimate governmental] objective.'"[148]  There is no support for Plaintiff's allegation that the Standing Bail Order discriminates based on wealth.  It does not

---

Amendment is not an absolute right."); *Nunnelley v. Douglas Cnty.*, 622 F.Supp. 124, 127 (D. Nev. 1985).

[145] *Mastrian*, 326 F.2d at 710.

[146] *U.S. v. Melendez-Carrion*, 790 F.2d 984, 997 (2d Cir. 1986); *Salerno*, 481 U.S. at 752; *Nowaczyk v. State of N.H.*, 882 F.Supp. 18, 21 (D.N.H. 1995); *U.S. v. Abrahams*, 575 F.2d 3, 5 (1st Cir. 1978); *Carlson v. Landon*, 342 U.S. 524, 544-46 (1952).

[147] *Harris*, 448 U.S. at 322.

[148] *Id.*

do so on its face. The amounts set forth in the bail schedule and adopted in the Standing Bail Order are proportionally based on the seriousness of the charged offense. The Standing Bail Order allows those individuals determined to be indigent by the Municipal Court to be released on their own recognizance. Thus, Plaintiff's claims are subject to rational-basis review.

Plaintiff's reliance upon *Salerno*'s "heightened" scrutiny, which says the law survives only when it is "narrowly tailored to serve a compelling state interest," is misplaced.[149] Nowhere in *Salerno* is strict scrutiny mentioned, let alone applied.

In *Salerno*, the Supreme Court acknowledged that liberty, in its broadest sense, is a fundamental right.[150] It explained, however, that the right asserted in *Salerno* was more limited; it was the right to bail *after* the "Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community."[151] As to *that* right, the Court said: "We cannot categorically state that pretrial detention 'offends some principle of justice so rooted in the traditions of conscience of our people as to be ranked as fundamental.'"[152] Thus, rather than holding that liberty is a fundamental right that requires bail in all instances, the Supreme Court held that the community's interest

---

[149] *Salerno*, 481 U.S. at 751; (*see* Doc. 34 at 11).
[150] *Salerno*, 481 at 750.
[151] *Id.*
[152] *Id.* (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105 (1934)).

in security can outweigh a defendant's interest in liberty and thus the Bail Reform Act could constitutionally deny bail to certain types of defendants.[153]

Consequently, because indigency is not a suspect class, and the right to bail or pretrial release is not a fundamental right, the Equal Protection analysis is subject to rational-basis review.[154]

### F.    The Use of a Secured Monetary Bail Schedule does not Violate the Equal Protection or Due Process Clauses of the Fourteenth Amendment.

The rational-basis test used to analyze an equal protection claim is identical to the test for a substantive due process claim.[155]

The rational-basis test requires, first, that the Standing Bail Order be rationally related to the achievement of a legitimate government purpose – a goal which the enacting government body *could* have been pursuing.[156]  The *actual*

---

[153] *Salerno*, 481 U.S. at 751.

[154] *Joel v. City of Orlando*, 232 F.3d 1353, 1358 (11th Cir. 2000); *see Farrow v. Lipetzky*, No. 12-cv-06495-JCS, 2013 U.S. Dist. LEXIS 65824 (N.D. Cal. May 8, 2013) (finding challenged penal code which utilized a bail schedule did not create a liberty interest under the due process clause of the Fourteenth Amendment), 2016 U.S. App. LEXIS 488, 2-3 (2016) (upholding dismissal of Equal Protection claims on appeal).

[155] *Gary*, 311 F.3d at 1338 n.10; *Restigouche, Inc. v. Town of Jupiter*, 59 F.3d 1208, 1214 n.6 (11th Cir. 1995); *see Bannum, Inc. v. City of Fort Lauderdale*, 996 F.Supp. 1230, 1239 (S.D. Fla. 1997), *aff'd*, 157 F.3d 819 (11th Cir. 1998).

[156] *Joel*, 232 F.3d at 1358 (emphasis in original).

motivations of the enacting governmental body are irrelevant.[157]  The second step

of rational-basis scrutiny asks whether a rational basis exists for the enacting

governmental body to believe that the legislation would further the hypothesized

purpose.[158]  The proper inquiry is concerned with the *existence* of a conceivably

rational basis, not whether that basis was actually considered by the legislative

body.[159]

  Under rational-basis analysis, an ordinance or other legislative enactment is

entitled to a "strong presumption of validity,"[160] so much so that the court's review

of enactments under the rational-basis standard must be "a paradigm of judicial

restraint."[161]  Rational-basis review in equal-protection analysis "is not a license

for courts to judge the wisdom, fairness, or logic of legislative choices."[162]  The

Equal Protection Clause does not require government decision makers to articulate

any reason for their actions,[163] nor does it require any record evidence of a

legitimate purpose.[164]  Instead, the policy determination "must be upheld against

---

[157] *Id.*

[158] *Id.*

[159] *Id.*

[160] *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314-15 (1993).

[161] *Id.* at 314.

[162] *Id.* at 313; *see also Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

[163] *Beach*, 508 U.S. at 315.

[164] *Panama City Med. Diagnostic Ltd. v. Williams*, 13 F.3d 1541, 1546 (11th Cir. 1994); *Nordlinger v. Hahn*, 505 U.S. 1, 15 (1992).

equal protection challenge if any reasonably conceivable state of facts could provide a rational basis for the classification."[165]

Under the rational-basis review, the Standing Bail Order and use of secured bail schedules easily pass constitutional muster. "While we agree that a primary function of bail is to safeguard the courts' role in adjudicating the guilt or innocence of defendants, we reject the proposition that the Eighth Amendment categorically prohibits the government from pursuing other admittedly compelling interests through regulation of pretrial release."[166] The Standing Bail Order does not categorically deny bail to any group of individuals; to the contrary, it allows any individual to obtain bail.

In reviewing the Standing Bail Order, it can readily be concluded that the City was pursuing a legitimate governmental purpose. Utilizing a proportionally-related secured bond to the charged offense to assure an arrestee's presence at trial is a recognized, legitimate governmental interest.[167] It is well established that the purpose of pretrial bond is to protect the community from potentially violent

---

[165] *Beach Commc'ns, Inc.*, 508 U.S. at 313; *Gary*, 311 F.3d at 1339 (the rational relationship between the means adopted and the legislation's purpose must be "at least debatable") (quoting *U.S. v. Carolene Prods. Co.*, 304 U.S. 144, 154 (1938)).
[166] *Salerno*, 481 U.S. at 753.
[167] *See Ayala*, 262 Ga. at 705.

individuals and secure the appearance of the person in court for trial.[168] "The right to release before trial is conditioned upon the accused's giving adequate assurance that he will stand trial" and, "the modern practice of requiring a bail bond or the deposit of a sum of money subject to forfeiture serves as additional assurance of the presence of an accused."[169]  The Standing Bail Order fully comports with the recognized and accepted purposes of pretrial bond.

As for the second step, a rational basis exists for the City's belief that utilizing the Standing Bail Order assures an arrestee's appearance.  The Standing Bail Order also "provides a speedy and convenient release" as contemplated in *Pugh*.[170]    The Standing Bail Order provides for an individualized bond determination no later than 48 hours after arrest should the arrestee declare indigency as the reason he or she is unable to post a secured bond.  Thus, an individualized factual determination by the Municipal Court allows for a reduction of bail should such factors warrant a reduction.[171]

This Court has also found that a pretrial detainee is not necessarily held in violation of a statute prohibiting the imposition of a financial condition that results

---

[168] *Hartsville/Trousdale Cnty.*, 2010 WL 4054141, at *6 (the terms of bail ($2,000) were indisputably imposed to ensure plaintiff's attendance at trial, which is a legitimate reason for imposing bail); *Ayala*, 262 Ga. at 705; O.C.G.A. § 17-6-1(e).
[169] *Stack*, 342 U.S. at 4-5.
[170] *Pugh*, 572 F.2d at 1057.
[171] (Standing Bail Order (Appendix Tab 5).)

in pretrial detention if he cannot make the financial provision of a bond.[172]  This Court relied on the holding in *U.S. v. Gotay*,[173] which rejected the detainee's argument that based upon his indigence and that of his family and friends he was entitled to be released on personal recognizance or unsecured appearance bond.[174] The *Gotay* court rejected this "logical extreme" as inconsistent with the intent of Congress, which deliberately retained financial conditions of release.[175]  Thus, Plaintiff's stated goal of abolishing the monetary bail system is contrary not only to the caselaw of this and other Circuits, but is also inconsistent with the express intent of Congress.

To the extent that Plaintiff argues that the Standing Bail Order and bail schedules impact only indigent individuals, caselaw makes clear that the City is not constitutionally required to remove obstacles not of its own creation.[176]  As discussed *supra*, indigency is not a suspect class.[177]  "Even where a group is entitled to more protection and a higher degree of scrutiny is applied, a law neutral on its face, yet having a disproportionate effect on the group will be deemed to

---

[172] *U.S. v. Wong-Alvarez*, 779 F.2d 583 (11th Cir. 1985) (analyzing 18 U.S.C. §§ 3142(b) and (c)).

[173] *U.S. v. Gotay*, 609 F.Supp. 156, 157-58 (S.D.N.Y. 1985).

[174] *Wong-Alvarez*, 779 F.2d at 584 (citing *Gotay*, 609 F.Supp. at 158).

[175] *Gotay*, 609 F.Supp. at 158.

[176] *Joel*, 232 F.3d at 1359; *Maher*, 432 U.S. at 470-41.

[177] *See*, *supra* footnotes 141-143.

violate the Equal Protection Clause only if a discriminatory purpose can be proven."[178]   Again, the government "need not remove [obstacles] not of its own creation," including indigency.[179]

Plaintiff has not alleged, let alone proven, that the Standing Bail Order was implemented for the purpose of discriminating against indigent detainees. Utilizing a bond schedule – as expressly provided for by Georgia law – which draws distinctions based on the seriousness of the offense charged, not wealth, has no discriminatory purpose.   Consequently, any purported disparate effect on indigent detainees does not violate the Equal Protection Clause.[180]

Plaintiff and the District Court cited a litany of cases where individuals were jailed because they could not afford to pay a fine or court cost.[181]  These cases are inapposite – it is one thing to jail an individual *because* he cannot afford to pay a fine or fee; it is quite another for the City to grant an individual bail (to which there

---

[178] *Joel*, 232 F.3d at 1359; *see Washington v. Davis*, 426 U.S. 229, 239-40 (1976) (Equal Protection Clause not implicated by classifications resulting in disparate racial impact absent evidence of discriminatory intent); *see also Personnel Adm'r of Mass v. Feeney*, 442 U.S. 256, 272-81 (1979) (neutral law that disproportionately impacts women does not violate Equal Protection Clause unless impact can be traced to discriminatory purpose).

[179] *Harris*, 448 U.S. at 317.

[180] *See Joel*, 232 F.3d at 1359; *Joyce v. City & Cnty. of San Francisco*, 846 F.Supp. 843 (N.D. Cal. 1994) ("[A] neutral law found to have a disproportionately adverse effect upon a minority classification will be deemed unconstitutional only if it can be traced to a discriminatory purpose.").

[181] (Doc. 7 at 7-15; Doc. 34 at 9-10; Doc. 40 at 48-58.)

is no federal constitutional entitlement) which, for reasons not within the City's control, the individual cannot pay. For example, in *Tate v. Short*[182] and *Williams v. Illinois*,[183] the Supreme Court held that a state may not impose a fine as a sentence and then automatically convert it into a jail term solely because the defendant is indigent and cannot pay the fine forthwith. *Griffin v. Illinois*[184] held that dismissing a post-conviction petition for failure to submit a transcript, for individuals who could not afford to pay for a transcript, violated their due process rights. In *Douglas v. California*,[185] the Court held that denying appointed counsel to criminal defendants on direct appeal violates their rights under the Fourteenth Amendment. Here, however, neither Plaintiff nor the District Court provides a single authoritative citation to support finding a violation of the Equal Protection Clause under circumstances similar to the procedures in the City's Standing Bail Order.

Because the Standing Bail Order, and the statutorily-prescribed secured monetary bail schedule adopted within it, serves a rationally-related legitimate governmental purpose for which no discriminatory intent can be shown, the

---

[182] 401 U.S. 395 (1971).

[183] 399 U.S. 235 (1970).

[184] 351 U.S. 12 (1956).

[185] 372 U.S. 353 (1963).

Standing Bail Order and use of bail schedules do not violate the Equal Protection or Due Process Clauses of the Fourteenth Amendment.

Similarly, Plaintiff is not entitled to a preliminary injunction based on his Due Process Claim. Although Plaintiff's Complaint does not specify whether he is bringing a procedural or substantive due process claim, nor does the District Court's Order clarify, he cannot state a claim based upon substantive due process. "As a general matter, the Court has always been reluctant to expand the concept of substantive due process," and thus, the protections of this clause "have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity."[186] Plaintiff fails to even distinguish between his Equal Protection and Due Process claims.[187]

Plaintiff cannot prevail even under a proper formulation of his Due Process claim. The Supreme Court has taken a deferential approach to state criminal laws when they are challenged under the Due Process Clause.[188] "The Bill of Rights speaks in explicit terms to many aspects of criminal procedure, and the expansion of those constitutional guarantees under the open-ended Due Process Clause

---

[186] *Albright v. Oliver*, 510 U.S. 266, 272 (1994).

[187] (*See* Docs. 1, 7, 22-1.)

[188] *Medina v. California*, 505 U.S. 437, 443 (1992) (noting that "beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation").

-48-

invites undue interference with both considered legislative judgments and the careful balance that the Constitution strikes between liberty and order."[189]  Under this test, a state criminal law does not violate due process unless it "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."[190]    As an example, while the criminal trial of an incompetent individual violates due process, states do not violate due process by putting the burden of proof on the criminal defendant to establish his lack of competency.[191]

Plaintiff contends that there are simple alternatives to "jailing the poor" available under Georgia law.[192]  But the Due Process Clause is not a vehicle for a party to impose its preferred policy choice.[193]  Accordingly, to the extent Plaintiff asserts a due-process claim, it fails.

---

[189] *Id.*

[190] *Id.* at 445 (quoting *Speiser v. Randall*, 357 U.S. 513, 523 (1958)).

[191] *Medina*, 505 U.S. at 453; *see Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979) ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.").

[192] (Doc. 7 at 15-22.)

[193] *Spencer v. Texas*, 385 U.S. 554, 564 (1967) (noting that "a state rule of law does not run afoul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser to give a surer promise of protection to the prisoner at bar").

"A pretrial detainee's constitutional rights arise not from the Eighth Amendment, but from the Due Process Clause of the Fourteenth Amendment."[194] "There is no absolute right to release on bail."[195] "The Fourteenth Amendment simply does not provide the absolute entitlement to pretrial release."[196]

No precedent has been cited by Plaintiff or the District Court for the proposition that a criminal defendant is absolutely entitled to pretrial release or that the use of a secured bond schedule is unconstitutional.[197] O.C.G.A. § 17-6-1 provides that defendants are entitled to bail. Nowhere in Title 17 does it state that defendants are entitled to release.

Instead, Plaintiff and the District Court rely on cherry-picked dicta rather than the express holdings of the cases they cite.[198] For example, the District Court cites *Williams v. Farrior* for the proposition that a bail system which allows only monetary bail and does not provide for any meaningful consideration of other possible alternatives for indigent pretrial detainees infringes on both equal

---

[194] *Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1313 n.13 (11th Cir. 2005).
[195] *Williams v. Farrior*, 626 F.Supp. 983, 986 (S.D. Miss. 1986).
[196] *Id.*
[197] *See Schilb*, 404 U.S. at 487 (in the "face of silence," Supreme Court unwilling to find constitutional implications).
[198] (*See e.g.*, Doc. 7 at 11; Doc. 40 at 50 (*see* District Court's discussion of *Williams*).)

protection and due process requirements.[199]    However, the express holding in *Williams* is that the Fourteenth Amendment simply does not provide an absolute entitlement to pretrial release.[200]

In finding the Standing Bail Order and use of a secured bail schedule unconstitutional, the District Court summarily found that "any bail or bond scheme that mandates payment of pre-fixed amounts for different offenses to obtain pretrial release, without any consideration of indigence or other factors, violates the Equal Protection Clause."[201]    The District Court, however, failed to conduct any Equal Protection analysis in arriving at this conclusion, including what level of scrutiny was being applied or what standard of review applied.[202]    The District Court further erred by not taking into account that the Standing Bail Order does in fact allow for an individualized indigency determination.[203]

By failing to utilize a rational-basis review in evaluating the constitutionality of the Standing Bail Order, the District Court erred in finding that the City's use of a secured monetary bail schedule unconstitutional and thereby further erred in entering the preliminary injunction.

---

[199] (Doc. 40 at 55.)
[200] *See Williams*, 626 F.Supp. at 986.
[201] (Doc. 40 at 49.)
[202] (*Id.*)
[203] (Standing Bail Order (Appendix Tab 5).)

### G. The Standing Bail Order Satisfies All Constitutional Requirements.

The Excessive Bail Clause does not guarantee a right to bail.[204]    Several appellate courts have found that there is no federal constitutional right to bail immediately after arrest.[205]    Moreover, the Constitution does not require an immediate determination of bail.[206]

The Supreme Court has recognized that probable cause decisions must be made promptly, but has also recognized that states should be given enough time to combine such hearings with other preliminary procedures, including bail determinations.[207]    In *City of Riverside v. McLaughlin*,[208] the Supreme Court held that jurisdictions which provide probable-cause hearings within forty-eight hours

---

[204] *Salerno*, 481 U.S. at 754.

[205] *See Fields*, 701 F.3d at 185; *Woods*, 940 F.2d at 283; *Collins v. Ainsworth*, 382 F.3d 529, 545 (5th Cir. 2004) ("There is no right to post bail within 24 hours of arrest."); *Scalpi v. Town of East Fishkill*, 14-cv-2126(KMK), 2016 U.S. Dist. LEXIS 24530, 27 n.11 (S.D.N.Y. Feb. 29, 2016).

[206] *See Farrow*, 2013 WL 1915700, at *22 (dismissing plaintiff's alleged Fourteenth Amendment claim regarding a five to thirteen day delay between his arrest and bail hearing for failure to state a claim); *Holder v. Town of Newton*, No. 08-cv-197-JL, 2010 WL 432357, *10-11 (D.N.H. Feb. 3, 2010) (noting that a right to immediate bail hearing did not exist); *Hartsville/Trousdale Cnty.*, 2010 WL 4054141, at *8 (holding that a bail hearing held within 48 hours of arrest is presumptively constitutional).

[207] *Hartsville/Trousdale Cnty.*, 2010 WL 4054141, at *8.

[208] 500 U.S. 44, 56 (1991).

will generally be "immune from systematic challenges."[209]  "The clear import of *McLaughlin*, then, is that a bail hearing held within 48 hours of a warrantless arrest is also presumptively constitutional."[210]

The Standing Bail Order, which re-adopted and re-affirmed the written and established schedule of secured bail, includes all forms of bail authorized by the Georgia General Assembly.[211]    Georgia Uniform Superior Court Rule 26.1 specifically contemplates the use of bail schedules because without the use thereof, the accused could not obtain release prior to the first appearance before the court to assess bail.[212]  The Standing Bail Order provides that an individual who is still in custody not later than 48 hours from their arrest without having posted a secured bond is to be brought for a "first appearance" before the Municipal Court.[213]  At this hearing, the Municipal Judge will make an individualized factual determination regarding whether the accused shall qualify as an "indigent person" as defined by O.C.G.A. § 17-2-2(6)(A).  If the accused is found to be an "indigent

---

[209] *Id.* at 55.

[210] *Holder*, 2010 WL 432357, at *10-11; *Hopkins v. Bradley Cnty., Tenn.*, 338 S.W.3d 529, 538 (Tenn. Ct. App. 2010); Georgia Uniform Superior Court Rule 26.1 (immediately following any arrest but not later than 48 hours of a warrantless arrest the accused shall be presented for first appearance).

[211] (Standing Bail Order (Appendix Tab 5).)

[212] *See* Uniform Superior Court Rule 26.1(h)  (the court will set the amount of bail at the first appearance).

[213] (*See* Appendix Tab 5); *see McLaughlin*, 500 U.S. at 56 (bail hearing may be delayed up to 48 hours).

person" or has not been provided with a timely "first appearance," the Municipal Judge will employ a release on a "recognizance bond."[214]  The 48 hours provided for the in Standing Bail Order is presumptively constitutional.[215]

In *Turner v. Rogers*, the Supreme Court considered whether the Due Process Clause requires the appointment of counsel to indigent individuals facing imprisonment for the non-payment of court-ordered child support.[216]  In conducting its evaluation, the Court found that the following procedural safeguards, if employed together, reduced the risk of an erroneous deprivation of liberty: including (1) notice to the defendant that his "ability to pay" is a critical issue in the contempt proceeding; (2) the use of a form (or the equivalent) to elicit relevant financial information; (3) the opportunity at the hearing for the defendant to respond to statements and questions about his financial status (*e.g.*, those triggered by his response on the form); and (4) an express finding by the court that the defendant has the ability to pay.[217]  All of the procedural safeguards contemplated by the Supreme Court are provided for by the Standing Bail Order

---

[214] (Standing Bail Order (Appendix Tab 5).)
[215] *See McLaughlin,* 500 U.S. at 56; *Holder,* 2010 WL 432357, at *10-11; *Hopkins,* 338 S.W.3d at 538.
[216] *Turner,* 131 S.Ct. at 2515-20.
[217] *Id.* at 2519.

and therefore, Plaintiff and the putative class members are afforded the requisite constitutional protections.[218]

Because the Standing Bail Order allows for an individualized hearing within 48 hours and comports with all constitutional due process protections, it is presumptively constitutional, and Plaintiff is unlikely to succeed on the merits of his claim.[219]

### H.    Plaintiff Failed to Petition for a Writ of Habeas Corpus.

Plaintiff challenged his custody in the Gordon County Jail due to his inability to meet the requirement for a secured bail for pre-trial release.[220] It is well established that a Section 1983 lawsuit filed by an individual in custody "is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceeding) – *if* success in that action would

---

[218] (See Standing Bail Order (Appendix Tab 5).)
[219] *Terrell*, 481 F.Supp.2d at 766; *Farrow*, 2013 WL 1915700, *22 (dismissing plaintiff's Fourteenth Amendment claim regarding a five to thirteen day delay between his arrest and bail hearing for failure to state a claim, noting that challenged penal code was procedural, mandating no substantive outcome); *Tate*, 2010 WL 4054141, at *8 (holding that bail hearing held within 48 hours of arrest is presumptively constitutional); *Collins v. Ainsworth*, 382 F.3d 529, 545 (5th Cir. 2004) ("There is no right to post bail within 24 hours of arrest").
[220] (*See* Doc. 1.)

necessarily demonstrate the invalidity of confinement or duration."[221]    Habeas

corpus is the exclusive remedy for a confined individual who challenges the fact or

duration of his confinement and seeks immediate or speedier release, "even though

such a claim may come within the literal terms of § 1983."[222]

Plaintiff challenges not only the duration of his confinement but the

constitutionality of posting secured bail while awaiting trial, in addition to

representing the class.    "The sole remedy in federal court" for a prisoner

challenging the constitutionality of his confinement is a petition for a writ of

habeas corpus.[223]    The core of the injunctive relief sought necessitates the

immediate release of the class members without assessing any individualized

qualifications, including indigency.    Plaintiff is required to seek relief through

Section 2254 and should not be permitted to bypass this requirement by bringing a

civil action pursuant to Section 1983.

Petitioning for a writ of habeas corpus is the only option available, but

Plaintiff has failed to provide any evidence demonstrating compliance with Section

---

[221] *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005); *see Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (habeas corpus is the exclusive remedy for prisoners attacking the validity of their conviction or confinement).
[222] *Heck v. Humphrey*, 512 U.S. 477, 481 (1994).
[223] *Edwards v. Balisok*, 520 U.S. 641, 645 (1997).

2254(b)(1).  Unlike the petitioners in many of the cases Plaintiff relies upon,[224] Plaintiff failed to file a petition for a writ of habeas corpus challenging the bail requirements at the state court level.  Accordingly, Plaintiff failed to exhaust his state court remedies prior to filing this action with the District Court.[225]  Thus, Plaintiff is unlikely to succeed on the merits of his claims.

## I.    No Policy of the Governing Authority Caused the Alleged Constitutional Injury.

The City cannot be liable under Section 1983 for having a "policy" of wrongfully incarcerating indigent defendants pursuant to the use of a secured bond schedule because the relevant decisions were not made by the City, but rather were made by a municipal judge acting in her judicial capacity.[226]

The standards establishing municipal liability under Section 1983 are set out in *Monell v. Dept. of Soc. Servs. of the City of New York*,[227] where the Supreme Court decided that a municipality can be found liable under Section 1983 only where the municipality itself causes the constitutional violation at issue.[228]  "It is only when the 'execution of [the] government's policy or custom ... inflicts the

---

[224] *See e.g.*, *Tate*, 401 U.S. 395.

[225]  Plaintiff also never filed a motion for reduction of bail, which the Supreme Court has characterized as "[t]he proper procedure for challenging bail as unlawfully fixed." *Stack*, 345 U.S. at 5.

[226] *See Whisenant v. City of Haltom City*, 106 Fed. App'x 915, 917 (5th Cir. 2004).

[227] 436 U.S. 658 (1978).

[228] *Monell*, 436 U.S. at 694-95.

-57-

injury' that the municipality may be held liable under § 1983."[229]  "Congress did not intend municipalities to be held liable unless action pursuant to *official municipal policy* of some nature caused a constitutional tort."[230]  Recovery from a municipality is limited to acts that are, properly speaking, "acts of the municipality" –that is, acts which the municipality has officially sanctioned or ordered.[231]  Whether an official has policymaking authority is a question of state law.[232]  A judge alone has sole discretion to address the issue of bail.[233]

In *Harris v. City of Austin*, the district court dismissed Plaintiff's Section 1983 case in which plaintiff alleged the city had an unconstitutional policy as to municipal court proceedings that jailed people who were too poor to pay their fines and fees for traffic tickets and other petty misdemeanors in violation of her Sixth and Fourteenth Amendment rights.[234]  The Court agreed with the city that actions taken by municipal judges in their judicial capacities cannot constitute municipal policy.[235]

---

[229] *Springfield, Mass. v. Kibbe*, 480 U.S. 257, 267 (1987).

[230] *Monell*, 436 U.S. at 691.

[231] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986).

[232] *Id.* at 843.

[233] *Myers*, 289 Ga. at 241 (emphasis added).

[234] *Harris v. City of Austin*, 1:15-cv-00956-SS, 2016 U.S. Dist. LEXIS 33694 (W.D. Tex. March 16, 2016).

[235] *Id.* at 12.

The Fifth Circuit has "repeatedly held … that a municipal judge acting in his or her judicial capacity to enforce state law does not act as a municipal officer or lawmaker."[236]    The Fifth Circuit recognized the distinction between "administrative duties," the exercise of which might be actionable as municipal policy under *Monell*, as compared with a judge's "judicial function, in which he or she effectuates state policy by applying state law."[237]  "Only with respect to actions taken pursuant to his or her administrative role can a judge be said to institute municipal policy under . . . *Monell*."[238]

In *Eggar v. City of Livingston*, the Ninth Circuit affirmed the lower court's grant of summary judgment on the plaintiffs' Section 1983 claims to a city and municipal judge on grounds the plaintiffs failed to demonstrate the municipal judge was a municipal policymaker or had followed an unconstitutional city policy.[239] As the Ninth Circuit reasoned:

> Because the judge was functioning as a state judicial officer, his acts and omissions were not part of a city policy or custom.    A municipality cannot be liable for judicial conduct it lacks the power to

---

[236] *Johnson v. Moore*, 958 F.2d 92 (5th Cir. 1992) (citing *Bigford v. Taylor*, 834 F.2d 1213, 1221-22 (5th Cir. 1988)); *Carbalan v. Vaughn*, 760 F.2d 662, 665 (5th Cir. 1985); *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980).
[237] *Familias Unidas*, 619 F.2d at 404.
[238] *Id.*
[239] 40 F.3d 312, 313 (9th Cir. 1994).

require, control, or remedy, even if that conduct parallels or appears entangled in the desires of the municipality.[240]

Similarly, because the City had no power to control the Municipal Court's judicial actions, the City cannot be held liable.

Plaintiff discusses "Calhoun's post-arrest detention scheme of secured bail," but fails to provide any evidence or documentation demonstrating that this was an "official municipal policy" as required by *Monell*.[241]  Neither the Plaintiff nor the District Court cite any minutes, transcripts of meetings in Council chambers, a manual, or letter stating that a policy was approved, sanctioned, or even proposed by the mayor or council members.  Moreover, while the City operates the Municipal Court, as created by the enactment of local legislation, once established, it is a separate judicial branch serving exclusively as the initial court of inquiry as provided by O.C.G.A. § 33-32-1 *et seq.* and O.C.G.A. § 40-13-20 *et seq.*  It is the established law of the State of Georgia that the judge alone has the sole discretion to address the issue of bail.[242]  Moreover, O.C.G.A. § 17-6-1(f)(1) states that "*the judge* of any court of inquiry may by written order establish a schedule of bails …."[243]  It does not state that the City or its elected officials can adopt the schedule.

---

[240] *Id.* at 316.
[241] (*See* Docs. 1; 4); *Monell*, 436 U.S. at 694-96.
[242] *See Grimes*, 219 Ga. 585; *Pullin v. Dorsey*, 271 Ga. 882 (2000).
[243] O.C.G.A. § 17-6-1(f)(1) (emphasis added).

Instead, Plaintiff and the District Court rely upon the City's Code for the proposition that the City "possesses considerable control over the municipal court" because the Code allows the City to create the Municipal Court, set the compensation for judges, and appoint or terminate judges.[244]   However, nothing beyond mere conjecture has been proffered to support the position that the City exerts improper control or influence over the Municipal Court's judicial decision-making.[245]

Plaintiff's similar argument concerning the City's control over its police chief, and the District Court's reliance thereon, likewise fails.[246]   "Society would be ill-served if its police officers took it upon themselves to determine which laws are and which laws are not constitutionally entitled to enforcement."[247]   Asking police officers to question a judge's decision strips courts of their uniform, systematic authority and asks instead individuals who are not legally trained in the nuances of the Constitution to make those decisions.   The police chief cannot determine the amount of bail to set for arrestees, so even upon the issuance of an

---

[244] (Doc. 34 at 13-14; Doc. 40 at 63-65.)

[245] *See Gadsby v. American Golf Corp. of Cal.*, 557 Fed. App'x 837, 839 (11th Cir. 2014).

[246] (Doc. 34 at 15-16; Doc. 40 at 64-65.)

[247] *Michigan v. DeFillippo*, 443 U.S. 31 (1979).

injunction, the police chief is bound to follow the orders of the Municipal Court as

bail determinations fall solely within the discretion of the Municipal Court.

### III.   THE BALANCE OF EQUITIES WEIGHS AGAINST AN INJUNCTION BECAUSE THE CITY IS AND WOULD BE IRREPARABLY INJURED BY THE ISSUANCE OF AN INJUNCTION.

The District Court erred in finding that Plaintiff met his burden to show that

he or the putative class members are likely to suffer irreparable harm before a

decision on the merits can be rendered.  Specifically, Plaintiff failed to set forth

any evidence[248] to show that there is a likelihood of irreparable harm to any class

members.  Plaintiff (who was released shortly after the Complaint was filed) will

not be injured absent a stay.

Rather, the City will be irreparably harmed if the Standing Bail Order is

enjoined because "[a]ny time a State is enjoined by a court from effectuating

statutes enacted by representatives of its people, it suffers a form of irreparable

injury."[249]  These concerns are particularly heightened where, as here, a party seeks

to essentially enjoin criminal proceedings.  "[A]s we have held, recognition of the

need for a proper balance between state and federal authority counsels restraint in

---

[248]  Plaintiff only conclusorily alleged – without any supporting evidence by affidavit or otherwise – his "Statement of Facts," and therefore, any alleged harm is speculative.  (Doc. 7 at 3-5, 24.)

[249]  *See New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977).

the issuance of injunctions against state officers engaged in the administration of the states' criminal laws in the absence of irreparable injury which is both great and immediate."[250]

"Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."[251]   Plaintiff has failed to make any such showing.   While Plaintiff provided one or two paragraphs regarding the City's alleged procedures, he failed to provide any evidence to support his bare conclusions.[252]   Conspicuously absent from the entire section of the "Statement of Facts" regarding the City's "Bail Policies" is a single citation of evidence or supporting authority.[253]   Furthermore, Plaintiff failed to provide a single citation – save a general report on jail statistics – to support his argument of irreparable harm occurring to prisoners in jail.[254]

---

[250] *City of Los Angeles v. Lyons*, 461 U.S. 95, 112 (1983).
[251] *Winter*, 555 U.S. at 22.
[252] (Doc. 7 at 3-5, 24.)
[253] (*Id.* at 3-5.)
[254] (*Id.* at 24.)

This Court has rejected Plaintiff's position that an alleged constitutional violation constitutes irreparable harm.[255] This Court has stated that "[n]o authority from the Supreme Court or the Eleventh Circuit has been cited … for the proposition that the irreparable injury needed for a preliminary injunction can properly be presumed from a substantially likely equal protection violation."[256]

The District Court further erred by entering a preliminary injunction in favor of the unnamed putative class members because the class had not yet been certified.[257] "[S]ystem-wide injunctive relief is not available based on alleged injuries to unnamed members of a proposed class."[258] "Any injury unnamed members of this proposed class may have suffered is simply irrelevant to the question whether the named plaintiffs are entitled to the injunctive relief they seek."[259]

---

[255] (*See id.* at 22-24); *see Siegel*, 234 F.3d at 1177 (rejecting plaintiff's contention that a violation of constitutional rights always constitutes irreparable harm).

[256] *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990).

[257] *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 728 (9th Cir. 1983); *Hollon v. Mathis Indep. Sch. Dist.*, 491 F.2d 92, 93 (5th Cir. 1974).

[258] *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999).

[259] *Id.*

## IV.   THE HARM THE PRELIMINARY INJUNCTION IS CAUSING OUTWEIGHS THE THREATENED INJURY TO PLAINTIFF.

Plaintiff fails to provide a single authoritative citation to support his broad conclusion that keeping arrestees in jail has "significant negative consequences for the public interest."[260]   Plaintiff conclusorily states that the "overwhelming consensus of experts is that the City will be safer by ceasing needlessly to detain the poor."[261]   In essence, Plaintiff is claiming that his "experts," whose practical experience, qualifications, and agendas are not disclosed, are more knowledgeable and qualified than the Georgia Legislature to determine Georgia's bail policies. Not only is there no binding authority proffered by Plaintiff in support, Plaintiff grossly mischaracterizes the factual scenario at issue.

There is nothing in the record or elsewhere to suggest that the City is detaining individuals based solely on their socioeconomic status.  The offenses for which individuals are detained are not petty, trivial offenses, as Plaintiff suggests.[262]   The individuals arrested pose a risk or danger to the community and, in some instances, themselves – like Plaintiff who was stumbling down a busy highway at night while intoxicated.[263]

---

[260] (Doc. 7 at 26.)
[261] (*Id.*)
[262] *See* O.C.G.A. § 16-8-14(b)(1) (theft); O.C.G.A. § 40-6-391 (DUI).
[263] (Aff. of Everett (Appendix Tab 1).)

The District Court found that given Plaintiff's "evidence" of indigency he might be subject to further violation of his rights.[264] However, in support of that finding, the District Court relied upon *Church v. City of Huntsville*, which addressed "involuntarily homeless" individuals being removed by the city due to their status.[265] While an involuntarily homeless individual being removed from the city limits could not avoid future exposure to the city's challenged course of conduct, Plaintiff and the class members he represents can in fact avoid any alleged future exposure – by not breaking the laws of the City of Calhoun and the State of Georgia.

The District Court erred by unilaterally adopting Plaintiff's unsupported assertion that the City could revert back to its previous bail policy as part of its reasoning in finding the Standing Bail Order unconstitutional.[266] But any reversion would create a new cause of action for Equal Justice Under Law. Plaintiff and the District Court also fail to account for any practical considerations. For example, the City contracts with the Gordon County Jail – thus, the longer an arrestee is housed, the more money it costs the City. From a purely economic perspective, it does not make practical sense for the City to actively seek to jail arrestees longer

---

[264] (Doc. 40 at 59.)
[265] (*Id.*); 30 F.3d at 1338-39.
[266] (Doc. 34 at 6; Doc. 40 at 58, 61-62.)

-66-

than necessary. The City, however, must adhere to the laws of the State of Georgia, and those do not provide for, or even contemplate, what Plaintiff demands – release pursuant to an *unsecured* recognizance bond.

Additionally, the threatened injury complained of by Plaintiff is moot pursuant to the Standing Bail Order.[267] Because the alleged "policy" which caused Plaintiff's alleged injuries is no longer applicable, it is not capable of repetition or causing any alleged injury.[268] Thus, there can be no reasonable expectation or demonstrated probability that the same alleged controversy will recur.[269]

The alleged injury to Plaintiff is moot and does not outweigh the harm caused by the entering of the preliminary injunction, which undermines the ability of the Municipal Court to enforce the laws of the State of Georgia and the City of Calhoun.[270] By granting the preliminary injunction, the District Court erred by forcing the Municipal Court to employ a system of unsecured recognizance bonds

---

[267] *Brooks v. Ga. State Bd. of Elections*, 59 F.3d 1114, 1118 (11th Cir. 1995) (under Article III, courts may adjudicate only actual, ongoing cases or controversies).

[268] *Id.*

[269] *Id.*

[270] *See Pugh*, 572 F.2d at 1059; *see J.A. ex rel. Swain v. Talladega Bd. of Educ.*, 41 F.Supp.3d 1302, 1313 (N.D. Ala. 2014) (injunctive relief would substantially undermine the Board of Education's decision-making process and authority to discipline students) (citing *Enterprise v. City Bd. of Educ. v. C.P.*, 698 So.2d 131, 133 (Ala. Civ. App. 1996) ("the trial court's judgment reversing the decision of the school board sends a signal that the board's policy and state law will not be strictly enforced.")).

which are nonexistent under the laws of the State of Georgia. As a result, the Municipal Court is currently operating – at the express directive of the District Court – in contravention of state law.

## V.    A PRELIMINARY INJUNCTION AGAINST THE CITY IS NOT IN THE PUBLIC INTEREST.

In *O'Shea*, a civil rights action challenging bond setting, sentencing, and jury fee practices in state court, the Supreme Court noted that "A federal court should not intervene to establish the basis for future intervention that would be so intrusive and unworkable."[271] An injunction of the type contemplated would disrupt the normal course of proceedings in the Municipal Court. To enforce this type of relief, the District Court would have to sit in constant day-to-day supervision of the Municipal Court which would constitute a form of monitoring of the operation of the state court functions that is antipathetic to established principles of comity.[272] Plaintiff argues that the public interest always favors preventing the violation of a party's constitutional rights.[273] But this assumes a constitutional violation, which, for the reasons explained herein, Plaintiff cannot establish.

---

[271] *O'Shea*, 414 U.S. at 500.
[272] *Id.* at 501-02.
[273] (Doc. 7 at 24-25.)

Plaintiff has not articulated with any meaningful precision what relief he seeks.  If Plaintiff is asking the Court to prohibit the City's use of a bail schedule, it would mean that arrestees eligible for release pursuant to the bail schedule would remain jailed pending a court hearing setting the terms of each individual's release. Such an outcome would provide no tangible benefit to Plaintiff or members of the class, and could even make them worse off to the extent it resulted in more crowded jails or delays in obtaining an order setting the terms of release.  It would also mean that Plaintiff is in fact asking this Court to rule on the constitutionality of O.C.G.A. § 17-6-1(f)(1), which Plaintiff has denied.

If Plaintiff is asking the Court to order the City to provide new procedures or to apply new standards that do not presently exist under Georgia law, i.e. release pursuant to unsecured recognizance bonds, this request makes it impossible to order relief, or to assess what public costs that relief might impose and what benefits it might provide.  The anticipated reality of Plaintiff's requested relief, which Plaintiff and the District Court fail to account for, is an endless cycle of arrests on bench warrants, incarceration, and re-release because of inability to pay. As a result, Plaintiff has not demonstrated that the issuance of an injunction is justified, and the District Court erred by granting Plaintiff's Motion for a Preliminary Injunction.

-69-

## CONCLUSION

Plaintiff asks the District Court to exercise an extraordinary assertion of federal power over Georgia municipal and state courts that are lawfully acting at the direction of the State legislature. The District Court erred by holding that Plaintiff is likely to succeed on his Fourteenth Amendment claims. The Standing Bail Order draws distinctions based on seriousness of the offense charged, not wealth, and therefore easily passes a rational-basis review. The use of bond schedules is not *per se* unconstitutional under the Fourteenth Amendment or Section 1983, and is expressly provided for under Georgia law. This Court should reverse the Order of the District Court and hold that, pursuant to O.C.G.A. § 17-6-1(f)(1), the City's Standing Bail Order and use of a bond schedule are constitutional.

Respectfully submitted this 14th day of June, 2016.

**BRINSON, ASKEW, BERRY, SEIGLER,
RICHARDSON & DAVIS, LLP**

/s/ J. Anderson Davis
J. ANDERSON DAVIS
Georgia Bar No. 211077
A. FRANKLIN BEACHAM III
Georgia Bar No. 043743
SAMUEL L. LUCAS
Georgia Bar No. 142305
615 West 1st Street
Rome, Georgia 30161

-70-

Phone:  (706) 291-8853
Fax:  (706) 234-3574

*Attorneys for Appellant City of Calhoun, Georgia*

**CARLOCK, COPELAND & STAIR, LLP**

/s/ David F. Root
DAVID F. ROOT
Georgia Bar No. 614125
ABBY C. GROZINE
Georgia Bar No. 542723
One Ninety One Peachtree Tower
191 Peachtree Street, N.E.
Suite 3600
Atlanta, Georgia 30303
Telephone: (404) 522-8220
Fax (404) 523-2345

*Attorneys for Appellant City of Calhoun, Georgia*

/s/ George P. Govignon
GEORGE P. GOVIGNON
Georgia Bar No. 303290
109 North Wall Street
Calhoun, Georgia 30701
Telephone: (706) 629-7070
Facsimile: (706) 629-7438

*Attorney for Appellant City of Calhoun, Georgia*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of this Court's Order dated March 28, 2015, because it contains 15,696 words, excluding those parts of the brief exempted by Fed. R. App. 32(a)(7)(B)(iii) and 11th Cir. 32-4.

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared using Times New Roman 14-point font, which a proportionately spaced font.

Respectfully submitted this 14th day of June, 2016.

/s/ Abby C. Grozine
DAVID F. ROOT
Georgia Bar No. 614125
ABBY C. GROZINE
Georgia Bar No. 542723
One Ninety One Peachtree Tower
191 Peachtree Street, N.E.
Suite 3600
Atlanta, Georgia 30303
Telephone: (404) 522-8220
Fax (404) 523-2345

*Attorneys for Appellant City of Calhoun, Georgia*

## CERTIFICATE OF SERVICE

I certify that, on June 14, 2016, I electronically and manually filed a copy of

this "Brief of Appellant City of Calhoun, Georgia" and served a copy on all parties

by placing a copy in the U.S. Mail, addressed as follows:

Sarah Geraghty, Esq.
Ryan Primerano, Esq.
Southern Center for Human Rights
83 Poplar Street NW
Atlanta, Georgia 30303


Alec Karakatsanis, Esq.
Equal Justice Under Law
916 G Street NW, #701
Washington, DC  20001

J. Anderson Davis, Esq.
A. Franklin Beacham III, Esq.
Samuel L. Lucas, Esq.
Brinson Askew Berry Seigler
Richardson & Davis
P.O. Box 5007
Rome, Georgia 30161

George P. Govignon, Esq.
109 North Wall Street
Calhoun, GA  30701

/s/ Abby C. Grozine
DAVID F. ROOT
Georgia Bar No. 614125
ABBY C. GROZINE
Georgia Bar No. 542723
One Ninety One Peachtree Tower
191 Peachtree Street, N.E., Suite 3600
Atlanta, Georgia 30303
Telephone: (404) 522-8220
Fax (404) 523-2345

*Attorneys for Appellant City of Calhoun,*
*Georgia*

# ADDENDUM

5610000v.1

## O.C.G.A. § 17-6-1

Current Through the 2015 Regular Session

*Official Code of Georgia Annotated* > *TITLE 17. CRIMINAL PROCEDURE* > *CHAPTER 6. BONDS AND RECOGNIZANCES* > *ARTICLE 1. GENERAL PROVISIONS*

# § 17-6-1. Where offenses bailable; procedure; schedule of bails; appeal bonds

(a)  The following offenses are bailable only before a judge of the superior court:

    **(1)**  Treason;

    **(2)**  Murder;

    **(3)**  Rape;

    **(4)**  Aggravated sodomy;

    **(5)**  Armed robbery;

    **(5.1)**  Home invasion in the first degree;

    **(6)**  Aircraft hijacking and hijacking a motor vehicle;

    **(7)**  Aggravated child molestation;

    **(8)**  Aggravated sexual battery;

    **(9)**  Manufacturing, distributing, delivering, dispensing, administering, or selling any controlled substance classified under *Code Section 16-13-25* as Schedule I or under *Code Section 16-13-26* as Schedule II;

    **(10)**  Violating *Code Section 16-13-31* or *Code Section 16-13-31.1*;

    **(11)**  Kidnapping, arson, aggravated assault, or burglary in any degree if the person, at the time of the alleged kidnapping, arson, aggravated assault, or burglary in any degree, had previously been convicted of, was on probation or parole with respect to, or was on bail for kidnapping, arson, aggravated assault, burglary in any degree, or one or more of the offenses listed in paragraphs (1) through (10) of this subsection;

    **(12)**  Aggravated stalking; and

    **(13)**  Violations of Chapter 15 of Title 16.

(b)

    **(1)**  All offenses not included in subsection (a) of this Code section are bailable by a court of inquiry. Except as provided in subsection (g) of this Code section, at no time, either before a court of inquiry, when indicted or accused, after a motion for new trial is made, or while an appeal is pending, shall any person charged with a misdemeanor be refused bail.

    **(2)**  Except as otherwise provided in this chapter:

        **(A)**  A person charged with violating *Code Section 40-6-391* whose alcohol concentration at the time of arrest, as determined by any method authorized by law, violates that provided in paragraph (5) of subsection (a) of *Code Section 40-6-391* may be detained for a period of time up to six hours after booking and prior to being released on bail or on recognizance; and

        **(B)**  When an arrest is made by a law enforcement officer without a warrant upon an act of family violence or a violation of a criminal family violence order pursuant to *Code Section 17-4-20*, the person charged with the offense shall not be eligible for bail prior to the arresting officer or some

other law enforcement officer taking the arrested person before a judicial officer pursuant to _Code Section 17-4-21_.

(3) (A) Notwithstanding any other provision of law, a judge of a court of inquiry may, as a condition of bail or other pretrial release of a person who is charged with violating _Code Section 16-5-90_ or 16-5-91, prohibit the defendant from entering or remaining present at the victim's school, place of employment, or other specified places at times when the victim is present or intentionally following such person.

    (B) If the evidence shows that the defendant has previously violated the conditions of pretrial release or probation or parole which arose out of a violation of _Code Section 16-5-90_ or 16-5-91, the judge of a court of inquiry may impose such restrictions on the defendant which may be necessary to deter further stalking of the victim, including but not limited to denying bail or pretrial release.

(c)

(1) In the event a person is detained in a facility other than a municipal jail for an offense which is bailable only before a judge of the superior court, as provided in subsection (a) of this Code section, and a hearing is held pursuant to _Code Section 17-4-26_ or 17-4-62, the presiding judicial officer shall notify the superior court in writing within 48 hours that the arrested person is being held without bail. If the detained person has not already petitioned for bail as provided in subsection (d) of this Code section, the superior court shall notify the district attorney and shall set a date for a hearing on the issue of bail within 30 days after receipt of such notice.

(2) In the event a person is detained in a municipal jail for an offense which is bailable only before a judge of the superior court as provided in subsection (a) of this Code section for a period of 30 days, the municipal court shall notify the superior court in writing within 48 hours that the arrested person has been held for such time without bail. If the detained person has not already petitioned for bail as provided in subsection (d) of this Code section, the superior court shall notify the district attorney and set a date for a hearing on the issue of bail within 30 days after receipt of such notice.

(3) Notice sent to the superior court pursuant to paragraph (1) or (2) of this subsection shall include any incident reports and criminal history reports relevant to the detention of such person.

(d) A person charged with any offense which is bailable only before a judge of the superior court as provided in subsection (a) of this Code section may petition the superior court requesting that such person be released on bail. The court shall notify the district attorney and set a date for a hearing within ten days after receipt of such petition.

(e) A court shall be authorized to release a person on bail if the court finds that the person:

(1) Poses no significant risk of fleeing from the jurisdiction of the court or failing to appear in court when required;

(2) Poses no significant threat or danger to any person, to the community, or to any property in the community;

(3) Poses no significant risk of committing any felony pending trial; and

(4) Poses no significant risk of intimidating witnesses or otherwise obstructing the administration of justice.

However, if the person is charged with a serious violent felony and has already been convicted of a serious violent felony, or of an offense under the laws of any other state or of the United States which offense if committed in this state would be a serious violent felony, there shall be a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required or assure the safety of any other person or the community. As used in this subsection, the term "serious violent felony" means a serious violent felony as defined in _Code Section 17-10-6.1_.

(f)

(1) Except as provided in subsection (a) of this Code section or as otherwise provided in this subsection, the judge of any court of inquiry may by written order establish a schedule of bails and unless otherwise ordered by the judge of any court, a person charged with committing any offense shall be released from custody upon posting bail as fixed in the schedule.

(2) For offenses involving an act of family violence, as defined in *Code Section 19-13-1*, the schedule of bails provided for in paragraph (1) of this subsection shall require increased bail and shall include a listing of specific conditions which shall include, but not be limited to, having no contact of any kind or character with the victim or any member of the victim's family or household, not physically abusing or threatening to physically abuse the victim, the immediate enrollment in and participation in domestic violence counseling, substance abuse therapy, or other therapeutic requirements.

(3) For offenses involving an act of family violence, the judge shall determine whether the schedule of bails and one or more of its specific conditions shall be used, except that any offense involving an act of family violence and serious injury to the victim shall be bailable only before a judge when the judge or the arresting officer is of the opinion that the danger of further violence to or harassment or intimidation of the victim is such as to make it desirable that the consideration of the imposition of additional conditions as authorized in this Code section should be made. Upon setting bail in any case involving family violence, the judge shall give particular consideration to the exigencies of the case at hand and shall impose any specific conditions as he or she may deem necessary. As used in this Code section, the term "serious injury" means bodily harm capable of being perceived by a person other than the victim and may include, but is not limited to, substantially blackened eyes, substantially swollen lips or other facial or body parts, substantial bruises to body parts, fractured bones, or permanent disfigurements and wounds inflicted by deadly weapons or any other objects which, when used offensively against a person, are capable of causing serious bodily injury.

(4) For violations of *Code Section 16-15-4*, the court shall require increased bail and shall include as a condition of bail or pretrial release that the defendant shall not have contact of any kind or character with any other member or associate of a criminal street gang and, in cases involving a victim, that the defendant shall not have contact of any kind or character with any such victim or any member of any such victim's family or household.

(5) For offenses involving violations of *Code Section 40-6-393*, bail or other release from custody shall be set by a judge on an individual basis and not a schedule of bails pursuant to this Code section.

(g) No appeal bond shall be granted to any person who has been convicted of murder, rape, aggravated sodomy, armed robbery, home invasion in any degree, aggravated child molestation, child molestation, kidnapping, trafficking in cocaine or marijuana, aggravated stalking, or aircraft hijacking and who has been sentenced to serve a period of incarceration of five years or more. The granting of an appeal bond to a person who has been convicted of any other felony offense or of any misdemeanor offense involving an act of family violence as defined in *Code Section 19-13-1*, or of any offense delineated as a high and aggravated misdemeanor or of any offense set forth in *Code Section 40-6-391*, shall be in the discretion of the convicting court. Appeal bonds shall terminate when the right of appeal terminates, and such bonds shall not be effective as to any petition or application for writ of certiorari unless the court in which the petition or application is filed so specifies.

(h) Except in cases in which life imprisonment or the death penalty may be imposed, a judge of the superior court by written order may delegate the authority provided for in this Code section to any judge of any court of inquiry within such superior court judge's circuit. However, such authority may not be exercised outside the county in which said judge of the court of inquiry was appointed or elected. The written order delegating such authority shall be valid for a period of one year, but may be revoked by the superior court judge issuing such order at any time prior to the end of that one-year period.

(i) As used in this Code section, the term "bail" shall include the releasing of a person on such person's own recognizance, except as limited by the provisions of *Code Section 17-6-12*.

O.C.G.A. § 17-6-1

(j) For all persons who have been authorized by law or the court to be released on bail, sheriffs and constables shall accept such bail; provided, however, that the sureties tendered and offered on the bond are approved by the sheriff of the county in which the offense was committed.

## History

Orig. Code 1863, § 4625; Code 1868, § 4649; Code 1873, § 4747; Code 1882, § 4747; Penal Code 1895, § 933; Penal Code 1910, § 958; Ga. L. 1922, p. 51, § 1; Code 1933, § 27-901; Ga. L. 1973, p. 454, § 1; Ga. L. 1980, p. 1359, § 1; Ga. L. 1982, p. 910, § 1; Ga. L. 1983, p. 3, § 14; Ga. L. 1983, p. 358, § 1; Ga. L. 1983, p. 452, § 1; Ga. L. 1984, p. 22, § 17; Ga. L. 1984, p. 679, § 1; Ga. L. 1984, p. 760, § 1; Ga. L. 1985, p. 416, § 1; Ga. L. 1986, p. 166, §§ 1, 2; Ga. L. 1988, p. 358, § 1; Ga. L. 1989, p. 1714, § 1; Ga. L. 1990, p. 8, § 17; Ga. L. 1991, p. 416, § 1; Ga. L. 1991, p. 1401, § 1; Ga. L. 1992, p. 1150, § 1; Ga. L. 1992, p. 2527, § 1; Ga. L. 1993, p. 91, § 17; Ga. L. 1993, p. 1534, § 2; Ga. L. 1994, p. 532, § 1; Ga. L. 1994, p. 1270, § .5; Ga. L. 1994, p. 1625, § 5; Ga. L. 1995, p. 379, §§ 1, 2; Ga. L. 1995, p. 989, §§ 1, 2; Ga. L. 1996, p. 1233, § 1; Ga. L. 1996, p. 1624, § 1; Ga. L. 1997, p. 143, § 17; Ga. L. 1998, p. 270, § 9; Ga. L. 1999, p. 391, § 3; Ga. L. 2000, p. 1171, § 1; *Ga. L. 2006, p. 379, § 18/HB 1059*; *Ga. L. 2008, p. 817, § 1/HB 960*; *Ga. L. 2010, p. 226, § 1/HB 889*; *Ga. L. 2010, p. 230, §§ 8, 9/HB 1015*; *Ga. L. 2012, p. 899, § 8-8/HB 1176*; *Ga. L. 2013, p. 667, § 3/SB 86*; *Ga. L. 2014, p. 426, § 9/HB 770*.

OFFICIAL CODE OF GEORGIA ANNOTATED
Copyright 2016 by The State of Georgia All rights reserved.

## *Ga. Unif. Muni. Ct. 18.1*

The rules incorporate all state rule changes received by the publisher through January 30, 2016, for state and federal courts

*Georgia Court Rules* > *UNIFORM MUNICIPAL COURT RULES* > *RULE 18. BAIL IN CRIMINAL CASES*

## 18.1. Misdemeanor Cases.

Bail in misdemeanor cases shall be set as provided in *O.C.G.A. §§ 17-6-1* and *17-6-2*, and as provided by applicable municipal charter or ordinance.

GEORGIA RULES OF COURT ANNOTATED
Copyright © 2016 by Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved.

## *Ga. Unif. Muni. Ct. 18.2*

The rules incorporate all state rule changes received by the publisher through January 30, 2016, for state and federal courts

**Georgia Court Rules** > **UNIFORM MUNICIPAL COURT RULES** > **RULE 18. BAIL IN CRIMINAL CASES**

# 18.2. Felony Cases.

Bail in felony cases shall not be set by the municipal court in those cases which by law the bail may be set only by a superior court judge, unless a specific order has been executed for setting felony bonds by the superior court in the county of the municipality. All defendants in custody on the authority of the municipal court must be presented to the municipal court for initial appearance within the time requirements of *O.C.G.A. §§ 17-4-26* and *17-4-62* for further consideration of bail.

GEORGIA RULES OF COURT ANNOTATED
Copyright © 2016 by Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved.

## _Ga. Unif. Muni. Ct. 18.3_

The rules incorporate all state rule changes received by the publisher through January 30, 2016, for state and federal courts

_Georgia Court Rules_  >  _UNIFORM MUNICIPAL COURT RULES_  >  _RULE 18. BAIL IN CRIMINAL CASES_

# 18.3. Categories of Bail.

The court may set bail which may be secured by:

(1) Cash -- by a deposit with the municipal court clerk, municipal treasurer's office, municipal law enforcement or by internal operating procedure of an amount equal to the required cash bail; or

(2) Property -- by real estate located within the State of Georgia with unencumbered equity, not exempted, owned by the accused or surety, valued at double the amount of bail set in the bond; or

(3) Recognizance -- in the discretion of the court; or

(4) Professional -- by a professional bail bondsman authorized by the sheriff and in compliance with the rules and regulations for execution of a surety bail bond.

Bail may be conditioned upon such other specified and reasonable conditions as the court may consider just and proper. The court may restrict the type of security permitted for the bond although the local governing body shall determine what sureties are acceptable when a surety bond is permitted.

GEORGIA RULES OF COURT ANNOTATED

Copyright © 2016 by Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved.

## *Ga. Unif. Muni. Ct. 18.4*

The rules incorporate all state rule changes received by the publisher through January 30, 2016, for state and federal courts

*Georgia Court Rules* > *UNIFORM MUNICIPAL COURT RULES* > *RULE 18. BAIL IN CRIMINAL CASES*

## 18.4. Amendment of Bail.

The municipal court has the authority to amend any bail previously authorized by the municipal court under the provisions of *O.C.G.A. § 17-6-18*.

GEORGIA RULES OF COURT ANNOTATED
Copyright © 2016 by Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved.

### *Ga. Unif. Muni. Ct. 18.5*

The rules incorporate all state rule changes received by the publisher through January 30, 2016, for state and federal courts

*Georgia Court Rules* > *UNIFORM MUNICIPAL COURT RULES* > *RULE 18. BAIL IN CRIMINAL CASES*

## 18.5. Bail on Bind Over or Jury Demand.

Whenever a municipal court has set bail on cases that are bound over to another court for any reason, the bond shall be transferred to that agency or court.

GEORGIA RULES OF COURT ANNOTATED
Copyright © 2016 by Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved.