No. 16-10521

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

MAURICE WALKER, ON BEHALF OF HIMSELF AND OTHERS SIMILARLY SITUATED,

*Plaintiff-Appellee,*

v.

CITY OF CALHOUN, GEORGIA,

*Defendant-Appellant.*

On Appeal from the United States District Court for the
Northern District of Georgia,
No. 4:15-cv-00170-HLM

## REPLY BRIEF OF APPELLANT CITY OF CALHOUN, GEORGIA

J. ANDERSON DAVIS
*Counsel of Record*
A. FRANKLIN BEACHAM III
SAMUEL L. LUCAS
BRINSON, ASKEW, BERRY
RICHARDSON & DAVIS, LLP
615 West 1st Street
Rome, Georgia 30161
(706) 291-8853

DAVID F. ROOT
*Counsel of Record*
ABBY C. GROZINE
CARLOCK COPELAND & STAIR,
LLP
191 Peachtree Street NE
Suite 3600
Atlanta, Georgia 30303
(404) 522-8220

GEORGE P. GOVIGNON
109 NORTH WALL STREET
CALHOUN, GEORGIA 30701
(706) 629-7070

*Counsel for Defendant-Appellant*

September 8, 2016

## CERTIFICATE OF INTERESTED PERSONS

Appellant hereby certifies that the following is a full and complete list of the trial judges, all attorneys, persons, associations of persons, firms, partnerships or corporations that have an interest in the outcome of this appeal, as required by Rule 26.1 of the Federal Rules of Appellate Procedure and 11th Cir. R. 26.1, 26.1-2, and 26.1-3.

1.  Alabama League of Municipalities (Amicus);

2.  Alabama Municipal Insurance Corporation (Amicus);

3.  Alexander, Kent (Amicus);

4.  American Bar Association (Amicus);

5.  American Bail Coalition (Amicus);

6.  American Contractors Indemnity Corporation (Funder for Amicus Brief);

7.  Bail USA, Inc. (Funder for Amicus Brief);

8.  Balch & Bingham, LLP (Counsel for Amicus);

9.  Bancroft, PLLC (Counsel for Amicus);

10. Beacham III, A. Franklin (Counsel for Appellant);

11. Bradley Arant Boult & Cummings (Counsel for Amicus);

12. Brinson, Askew, Berry, Seigler, Richardson & Davis, LLP (Counsel for Appellant);

*Walker v. City of Calhoun*
No. 16-10521

13.    Brooke, Samuel (Counsel for Amicus);

14.    Brown, Paulette (Counsel for Amicus);

15.    Byrnes, John T. (Counsel for Amicus);

16.    Calderon, Tovah R. (Counsel for Amicus);

17.    Carlock, Copeland & Stair LLP (Counsel for Appellant);

18.    Center for Legal and Evidence-Based Practices (Amicus);

19.    City of Attalla, Alabama (Amicus);

20.    City of Calhoun, Georgia (Appellant);

21.    City of Gadsden, Alabama (Amicus);

22.    City of Montgomery, Alabama (Amicus);

23.    Clement, Paul D. (Counsel for Amicus);

24.    Copeland, Franco, Screws & Gill, PA (Counsel for Amicus);

25.    Cornett, Bradley W. (Counsel for Amicus);

26.    Daniel, Laurie Webb (Counsel for Amicus);

27.    Daniel, Jr., Harold T. (Counsel for Amicus);

28.    Darden, George W. ("Buddy") (Amicus);

29.    Davis, J. Anderson (Counsel for Appellant);

30.    Early, Emily C.R. (Counsel for Amicus);

31.    Equal Justice Under Law (Counsel for Appellee);

32.    Espy, Chase T. (Counsel for Amicus);

33.    Ford, Howard & Cornett, PC (Counsel for Amicus);

34.    Foster, Lisa (Counsel for Amicus);

35.    Georgia Association of Professional Bondsmen (Amicus);

36.    Georgia Municipal Association, Inc. (Amicus);

37.    Georgia Sheriff's Association (Amicus);

38.    Geraghty, Sarah (Counsel for Appellee);

39.    Govignon, George P. (Counsel for Appellant);

40.    Grozine, Abby C. (Counsel for Appellant);

41.    Gupta, Vanita (Counsel for Amicus);

42.    Haden, Ed R. (Counsel for Amicus);

43.    Holliday, Shannon (Counsel for Amicus);

44.    Horn, John A. (Counsel for Amicus);

45.    International Municipal Lawyers Association (Amicus);

46.    Jernigan-Johnson, Jessica (Counsel for Amicus);

47.    Karakatsanis, Alec (Counsel for Appellee);

48.    Ku, Christine H. (Counsel for Amicus);

49.    Lein, Lorelei (Counsel for Amicus);

50.    Lucas, Samuel L. (Counsel for Appellant);

51.    McGinley, Michael H. (Counsel for Amicus);

52.    Moore, Leland John (Counsel for Amicus);

53. Moore, Susan J. (Counsel for Amicus);

54. Murphy, Honorable Harold L. (United States District Judge);

55. Palmetto Surety Corporation (Funder for Amicus Brief);

56. Patel, Rusi C. (Counsel for Amicus);

57. Porter, James W. (Counsel for Amicus);

58. Porter, Porter & Hassinger, PC (Counsel for Amicus);

59. Pretrial Justice Institute and National Association of Pre-Trial Services Agencies (Amicus);

60. Primerano, Ryan (Counsel for Appellee);

61. Robertson, Brad (Counsel for Amicus);

62. Root, David F. (Counsel for Appellant);

63. Samuel, Donald F. (Amicus);

64. Shapiro, Iyla (Counsel for Amicus);

65. Sheehan, Jeffrey W. (Counsel for Amicus);

66. Southern Center for Human Rights (Counsel for Appellee);

67. Southern Poverty Law Center (Amicus);

68. Tankersley, Will Hill (Counsel for Amicus);

69. Thompson, Charles W. (Counsel for Amicus);

70. Thompson, Larry D. (Amicus);

71. United States of America (Amicus);

72.    Walker, Maurice (Appellee);

73.    Weil, Amy Levin (Amicus);

74.    West, Micah (Counsel for Amicus);

75.    Whitley, Joe D. (Amicus);

76.    Wilmer, Cutler, Pickering, Hale & Dorr LLP (Counsel for Amicus);

77.    Wold, Megan M. (Counsel for Amicus);

78.    Wolfson, Paul R. Q. (Counsel for Amicus);

79.    Zampierin, Sara (Counsel for Amicus).

September 8, 2016.

*/s/ Abby C. Grozine*

## <u>TABLE OF CONTENTS</u>

TABLE OF CITATIONS……………………………………………………..iii

SUMMARY OF ARGUMENT…………………………………………………1

ARGUMENT AND CITATION OF AUTHORITY……………………………2

I.      THE STANDING BAIL ORDER IS CONSTITUTIONAL…..…………..2

      A.     The Standing Bail Order Is Constitutional as Shown by the Terms Previously Agreed to by Plaintiff's Counsel in the City of Clanton Settlement………………………………………………………..2

      B.     The Standing Bail Order Complies with the Promptness Requirements of *McLaughlin*, Thereby Immunizing the City from Plaintiff's Challenge…………………………………………………………..5

      C.     The Principles of Federalism Afford Municipalities the Flexibility to Employ Different Pretrial Procedures………………………………..9

      D.     Strict Scrutiny Does Not Apply……………………………………..12

           1.     Because indigency is not a suspect class and there is no fundamental right to pretrial release, rational basis applies….12

           2.     The caselaw relied upon by the District Court and Plaintiff is inapposite …………………………………………………….15

      E.     The Standing Bail Order Withstands a Rational Basis Analysis……16

           1.     The Standing Bail Order is rationally related to the legitimate government purpose of ensuring an arrestee's appearance at trial………………………………………………..…..16

           2.     Bail schedules provide the flexibility contemplated by the Supreme Court…………………………………………..18

           3.     Plaintiff and the District Court fail to account for the practicalities of an unsecured system of release…..…………19

i

F.  It Is the Arrestee's Burden to Assert Indigency……………………24

II. THE INJUNCTION WAS IMPROPERLY GRANTED AGAINST
THE CITY OF CALHOUN……………………………………………………..26

A. The District Court Erred in Finding the Standing Bail Order Did Not
Moot This Litigation……………………………...…………………………..26

B. The Standing Bail Order Is Not The Policy of The City of Calhoun……..29

1. The Municipal Court Judge was acting in her judicial capacity……...…29

2. There is no implied right of action ……………………………………31

C. Plaintiff Improperly Asserts His Claims Under The Fourteenth
Amendment……………………………………………………………………..32

CONCLUSION………………………………………………………………..33

CERTIFICATE OF COMPLIANCE…………………………………………36

CERTIFICATE OF SERVICE………………………………………………..37

## TABLE OF CITATIONS

### Cases

*Albright v. Oliver*, 510 U.S. 266 (1994) ..................................................36

*Ashcroft v. Mattis*, 431 U.S. 171 (1977) ................................................30

*Baker v. McCollan*, 443 U.S. 137 (1979) ...............................................27

*Bearden v. Georgia*, 461 U.S. 660 (1983) ..........................................17, 19

*Beta Upsilon Chi Chapter at the Univ. of Florida v. Machen*, 586 F.3d 908 (11th

   Cir. 2009) ...............................................................................29

*Bostick v. Ricketts*, 236 Ga. 304 (1976) .................................................26

*Brady v. Dill*, 187 F.3d 104 (1st Cir. 1999) ............................................27

*Burks v. Price*, 6:13cv746, 2015 WL 3622684 (E.D. Tex. June 10, 2015) ............32

*Burnett v. State*, 182 Ga. App. 539 (1987) ............................................26

*Christian Coalition of Ala. v. Cole*, 355 F.3d 1288 (11th 2004) ............................30

*Collins v. Ainsworth*, 382 F.3d 529 (5th Cir. 2004) ...........................................7, 14

*Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320 (11th Cir. 2004) .....29

*County of Riverside v. McLauglin,* 500 U.S. 44 (1991)……………………..*passim*

*DeLeon v. City of Haltom City*, 106 Fed. App'x 909 (5th Cir. 2004) .....................32

*Fields v. Henry Cnty.*, 701 F.3d 180 (6th Cir. 2012) ...........................6, 7, 14, 18, 20

*Frazier v. Jordan*, 457 F.2d 726 (5th Cir. 1972) ......................................22

*Gerstein v. Pugh*, 420 U.S. 103 (1974)................................................7, 8, 9, 10, 11

*Glenn v. City of Columbus*, 75 Fed. App'x 983 (5th Cir. 2003) ...........................18

*Graham v. Connor*, 490 U.S. 386 (1989) .............................................................36

*Hearth, Inc. v. Dep't of Public Welfare*, 617 F.2d 381 (5th Cir. 1980) .................34

*Hernandez v. State*, 294 Ga. App. 289 (1990).......................................................20

*Holder v. Town of Newton*, No. 08-cv-197-JL, 2010 DNH 19, 2010 WL 432357

(D.N.H. Feb. 3, 2010) ....................................................................................7, 10

*Katz v. McVeigh*, 931 F.Supp.2d 311 (D.N.H. 2013)...............................................7

*LaGon v. State*, 334 Ga. App. 14 (2015) ...............................................................26

*Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29 (2010) ...................................34

*Maher v. Roe*, 432 U.S. 464 (1977)........................................................................13

*Massey v. State*, 278 Ga. App. 303 (2006) .............................................................26

*McAuliffe v. Rutledge*, 231 Ga. 1 (1973) ...............................................................26

*Metro Broadcasting, Inc. v. FCC*, 497 U.S. 547 (1990) .........................................24

*Nat'l Aeronautics & Space Admin. v. Nelson*, 562 U.S. 134 (2011)......................36

*Pauk v. Bd. Of Trustees of City of Univ. of New York*, 654 F.2d 856 (2d Cir. 1981)

.........................................................................................................................34

*Robertson v. Goldman*, 179 W. Va. 453 (1988) .....................................................21

*Saladin v. Milledgeville*, 812 F.2d 687 (11th Cir. 1987)........................................30

*San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1 (1973)......................13, 14

iv

*Gerstein v. Pugh*, 420 U.S. 103 (1974)..................................................7, 8, 9, 10, 11

*Glenn v. City of Columbus*, 75 Fed. App'x 983 (5th Cir. 2003) ............................18

*Graham v. Connor*, 490 U.S. 386 (1989) ...............................................................36

*Hearth, Inc. v. Dep't of Public Welfare*, 617 F.2d 381 (5th Cir. 1980) .................34

*Hernandez v. State*, 294 Ga. App. 289 (1990)........................................................20

*Holder v. Town of Newton*, No. 08-cv-197-JL, 2010 DNH 19, 2010 WL 432357

   (D.N.H. Feb. 3, 2010) ........................................................................................7, 10

*Katz v. McVeigh*, 931 F.Supp.2d 311 (D.N.H. 2013)................................................7

*LaGon v. State*, 334 Ga. App. 14 (2015) ................................................................26

*Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29 (2010) ...................................34

*Maher v. Roe*, 432 U.S. 464 (1977) ........................................................................13

*Massey v. State*, 278 Ga. App. 303 (2006) .............................................................26

*McAuliffe v. Rutledge*, 231 Ga. 1 (1973) ...............................................................26

*Metro Broadcasting, Inc. v. FCC*, 497 U.S. 547 (1990) ........................................24

*Nat'l Aeronautics & Space Admin. v. Nelson*, 562 U.S. 134 (2011).......................36

*Pauk v. Bd. Of Trustees of City of Univ. of New York*, 654 F.2d 856 (2d Cir. 1981)

   ...................................................................................................................................34

*Robertson v. Goldman*, 179 W. Va. 453 (1988) ......................................................21

*Saladin v. Milledgeville*, 812 F.2d 687 (11th Cir. 1987)........................................30

*San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1 (1973)........................13, 14

*Sibbach v. Wilson*, 312 U.S. 1 (1941)......................................................................32

*Snyder v. Mass.*, 291 U.S. 97 (1934) ......................................................................15

*Stack v. Boyle*, 342 U.S. 1 (1951) ..........................................................................35

*Terrell v. City of El Paso,* 481 F.Supp.2d 757 (W.D. Tex. 2007)..........................18

*Troiano v. Supervisor of Elections in Palm Beach Cty., Fla.*, 382 F.3d 1276 (11th

  Cir. 2004)..........................................................................................................29, 30

*U.S. v. McConnell*, 842 F.2d 105 (5th Cir. 1988).....................................................25

*United States v. Acevedo-Ramos*, 755 F.2d 203 (1st Cir. 1985)...............................6

*United States v. Lanier*, 520 U.S. 259 (1997)...........................................................36

*United States v. Salerno*, 481 U.S. 739 (1987)......................................6, 7, 14, 15

*United States v. Smith*, 686 F.Supp. 847 (D. Colo. 1988) ......................................32

*United States v. W.T. Grant Co.*, 345 U.S. 629 (1953) ...........................................29

*Whisenant v. City of Haltom City*, 106 Fed. App'x 915 (5th Cir. 2004).................32

*Woods v. City of Michigan City, Ind.*, 940 F.2d 275 (7th Cir. 1991) .....................14

*Younger v. Harris,* 401 U.S. 37 (1971)....................................................................28

## Congressional Provisions

U.S. Const. amend. VI……………………………………………………………26

U.S. Const. amend. VIII…………………………………………………………….6

U.S. Const. amend. XIV ……………………………………………1, 9, 32, 33, 34

**Other Authorities**

Judicial Council of California, Operations and Programs Division, Criminal Justice

Services, "Early Impacts of Proposition 47 on the Courts" (March 2016)..........38

**Rules**

Ala. R. Crim. P. 7.1 ……………………………………………………… 3

Ala. R. Crim. P. 7.2 ……………………………………………………… 3

**Statutes**

O.C.G.A. § 17-6-1......................................................................................... *passim*

O.C.G.A. § 36-35-6........................................................................................12

O.C.G.A. § 42-8-100........................................................................................11

## SUMMARY OF ARGUMENT

Plaintiff's goal of ending the monetary bail system through "social-justice litigation" is fatally flawed. What Plaintiff demands of this Court in upholding the District Court's Order – that any defendant arrested for any crime must be immediately released upon an unsupported assertion of indigency – is neither required by the Constitution nor supported by legal precedent. Rather, Plaintiff makes policy arguments that are more appropriately suited for a legislative body. Plaintiff's arguments are rooted in biased statistics for a group of people that the Supreme Court has never held to be a suspect class and for an alleged right that has never been held to be fundamental.

The Standing Bail Order is rationally related to a legitimate government purpose under the Fourteenth Amendment. The Standing Bail Order serves the competing goals of bail by allowing arrestees to obtain pretrial release within 48 hours while also assuring their presence at trial. A bail setting is not constitutionally excessive simply because a defendant is unable to satisfy it.

The 48-hour limit of the Standing Bail Order is consistent with the constitutional deadline for holding a probable cause hearing as contemplated by the Supreme Court. Any shorter time requirement does not allow for practical considerations like delays associated with the realities of law enforcement.

-1-

Plaintiff's reliance upon inapposite dicta and overheated freedom rhetoric is not sufficient to overcome Plaintiff's failure to show an actual constitutional violation. The Constitution does not require what Plaintiff demands nor does Georgia law provide for release based upon unsecured personal recognizance bonds. Because the Standing Bail Order strikes an appropriate balance between the competing interests of bail and provides for an individualized hearing as to bail and indigency, it is constitutional and the District Court's Order should be overturned.

## ARGUMENT AND CITATION OF AUTHORITY

**I.    THE STANDING BAIL ORDER IS CONSTITUTIONAL.**

   **A.    The Standing Bail Order Is Constitutional as Shown by the Terms Previously Agreed to by Plaintiff's Counsel in the City of Clanton Settlement.**

When the City was sued by Plaintiff, the Municipal Court took affirmative steps to correct the alleged violations in its bail practices. After substantial deliberation, Judge Smith entered the current Standing Bail Order in an effort to balance the concerns of Equal Justice Under Law ("EJUL") and the realities of law enforcement. Notably, the Standing Bail Order provided that if an arrestee did not post bail, then at the very latest within 48 hours, an individualized hearing to inquire into their ability to pay would take place. The 48-hour timeframe is the outer limit for this hearing to occur.

It is evident that Plaintiff and the District Court, however, failed to conduct any meaningful analysis of the current Standing Bail Order in declaring it unconstitutional. Plaintiff and the District Court have given little to no attention to the current Standing Bail Order.

Plaintiff and several amici rely on the settlement agreement and district court order issued in the lawsuit against the City of Clanton, Alabama initiated by EJUL in which many of the same "constitutional violations" were alleged.[1] The City of Clanton litigation was the first lawsuit initiated by EJUL which resulted in a settlement. Plaintiff's counsel from EJUL was intimately involved in negotiating and ultimately agreeing to the settlement, including the standing order adopted by the City of Clanton ("Clanton Order").

Most of the provisions of the Clanton Order are nearly identical to that of the Standing Bail Order. The Clanton Order provides for the use of a bail schedule with all offenses having a pre-set bail amount assigned thereto.[2] The Clanton Order affirmed that "utilization of such a bail schedule 'provides speedy and

---

[1] (Brief of Appellee at 20; Amici Brief of Southern Poverty Law Center at 7; Amici Brief of a Group of Georgia Lawyers, *passim*; Amici Brief of Department of Justice at 3, 8, 19); *Jones v. City of Clanton*, CAFN 2:15-cv-00034-MHT-WC (M.D. Ala. Feb. 13, 2015).

[2] (*Id*. at Doc. 72-2 at 8) ("This dollar bail amount shall be referred to as the City of Clanton's 'bail schedule.'".) While the Clanton Order provides for the use of unsecured bonds, such practice is explicitly allowed by statute in Alabama. *See* Ala. R. Crim. P. 7.1, 7.2. There is no similar Georgia statute that would allow the use of unsecured bonds for state offenses in Georgia's municipal courts.

-3-

convenient release for those who have no difficulty in meeting its requirements.'"[3] The Clanton Order further provided, "For those individuals who do not obtain release pursuant to the bail schedule…the Court will, within forty-eight hours of their arrest hold a hearing…."[4]

Not only was the Clanton Order brokered and agreed to by Plaintiff's counsel, the Clanton district court declared that the "Clanton Municipal Court's current bail practices, as they are reflected in the settlement agreement, are facially constitutional," meeting "constitutional due-process standards."[5]

Like the Clanton Order, the Standing Bail Order provides for the use of a bail schedule to allow for the speedy and convenient release for those who can post one of the three forms of secured bail contemplated by Georgia law: cash, property, or surety.[6] For those who do not obtain release pursuant to the secured bail schedule, within 48 hours from their arrest, they shall be brought before the Municipal Court for a hearing, including the opportunity to object to the set bail amount, or to assert any claim of indigency and the need for court-appointed counsel to assist in their release.[7] The Calhoun Municipal Court shall then determine whether the accused is unable to post a secured bail because he/she is

---

[3] (*Id.*) (citing *Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978)).
[4] (*City of Clanton*, Doc. 72-2 at 9.)
[5] (*Id.* at Doc. 76 at 6, 9.)
[6] (Appendix of Appellant, Tab 5 at 3, 5.)
[7] (*Id.* at 5.)

-4-

indigent, making an individualized determination based upon the evidence provided."[8]

Thus, in a comparison of the Clanton Order and the Standing Bail Order, both utilize a bail schedule, deemed by the Clanton district court to be "facially constitutional," and both provide for an individualized indigency determination within 48 hours. And while the difference is the use of unsecured bonds, Georgia law does not provide for the use of unsecured bonds. The City of Calhoun has taken what has been deemed constitutional and tailored it to Georgia law. Thus, applying the principles from the Clanton Order to those allowable under Georgia law, the Standing Bail Order is constitutional.

> ### B. The Standing Bail Order Complies with the Promptness Requirements of *McLaughlin*, Thereby Immunizing the City from Plaintiff's Challenge.

The Standing Bail Order does not deny any arrestee, regardless of economic status, the opportunity to obtain pretrial release. Rather, the Standing Bail Order utilizes a rational approach as articulated by the Supreme Court in *County of Riverside v. McLaughlin*.[9] In using a secured bond schedule, the Standing Bail Order provides "speedy and convenient release"[10] by allowing those who can promptly assure their appearance at trial to post a cash, property, or surety bond as

---

[8] (*Id.*)
[9] 500 U.S. 44 (1991).
[10] *See Pugh*, 572 F.2d at 1057.

-5-

permitted by O.C.G.A. § 17-6-1 *et seq.* The Standing Bail Order also provides individualized hearings within 48 hours of arrest for any arrestee not having already obtained pretrial release. Accordingly, the Standing Bail Order comports with constitutional guideposts set forth in *McLaughlin*.

Plaintiff concedes that some system akin to the Standing Bail Order is constitutional,[11] but apparently quibbles with Defendant's 48-hour maximum possible time for release. The 48-hour timeframe, however, is well-grounded in Supreme Court pre- and post-conviction jurisprudence.

There is no absolute right to bail under the Constitution.[12] The Eighth Amendment prohibits "excessive bail,"[13] but the Constitution "says nothing about whether bail shall be available at all,"[14] or about the timing of bail determinations. Rather, the Eighth Amendment mandates that when bail is granted, it may not be unreasonably high in light of the government's purpose for imposing bail.[15]

Although the Supreme Court has not imposed a specific time-limit by which the government must conduct a bail hearing, lower courts have used *McLaughlin*'s

---

[11] (Brief of Appellee at 28.)

[12] *See United States v. Salerno*, 481 U.S. 739, 752-53 (1987) (respondents concede the right to bail they have discovered in the Eighth Amendment is not absolute); *Carlson v. Landon*, 342 U.S. 524, 545-46 (1952); *United States v. Acevedo-Ramos*, 755 F.2d 203, 206 (1st Cir. 1985) (Breyer, J.); *Fields v. Henry Cnty.*, 701 F.3d 180, 183-84 (6th Cir. 2012) (Eighth Amendment does not mandate bail in all cases).

[13] U.S. Const. amend. VIII; *Salerno*, 481 U.S. at 754 ("Indeed, the very language of the Amendment fails to say all arrests must be bailable.").

[14] *Salerno*, 481 U.S. at 752.

[15] *Fields*, 701 F.3d at 184 (citing *Salerno,* 481 U.S. at 754); *Stack*, 342 U.S. at 4-5.

48-hour limitation as a useful guide.[16]    Notably, Plaintiff never addresses *McLaughlin*.

The *McLaughlin* 48-hour limitation arose from the Supreme Court's further analysis of *Gerstein v. Pugh*.[17]    In *Gerstein*, the Supreme Court held unconstitutional Florida procedures under which persons arrested without a warrant could remain in police custody for 30 days or more without a judicial determination of probable cause.[18]  "Whatever procedure the State may adopt, it must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a *judicial officer* either before or *promptly* after arrest."[19]

"The Court thus established a 'practical compromise' between the rights of individuals and the realities of law enforcement."[20]  Significantly, "*Gerstein* held that probable cause determinations must be prompt – not immediate."[21]

---

[16] *See, e.g., Collins v. Ainsworth*, 382 F.3d 529, 545 (5th Cir. 2004) (There is no right to post bail within 24 hours of arrest.  Mississippi law indicates that this limitation is 48 hours); *Holder v. Town of Newton*, No. 08-cv-197-JL, 2010 DNH 19, 2010 WL 432357, *11 (D.N.H. Feb. 3, 2010) (the clear import of *McLaughlin* is that a bail hearing held within 48 hours of a warrantless arrest is presumptively constitutional); *Katz v. McVeigh*, 931 F.Supp.2d 311, 352 (D.N.H. 2013) (distinguishing between excessive bail and the denial of bail).

[17] *Gerstein v. Pugh*, 420 U.S. 103 (1974).

[18] *See id.*

[19] *Id.* at 124-25 (emphasis added).

[20] *McLaughlin*, 500 U.S. at 53 (citing *Gerstein*, 420 U.S. at 113).

[21] *McLaughlin,* 500 U.S. at 54.

In analyzing what is "prompt" under *Gerstein*, the *McLaughlin* Court held that a jurisdiction that "provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*."[22]    "Given that *Gerstein* permits jurisdictions to incorporate probable cause determinations into other pretrial procedures, some delays are inevitable."[23]   In the Supreme Court's view, "a reasonable postponement of a probable cause determination while the police cope with the everyday problems of processing suspects through an overly burdened criminal justice system "is permissible."[24]

In balancing the competing interests of the "rights of individuals and the realities of law enforcement," the Supreme Court ultimately held that a government will be immune from a systematic challenge to its procedures if the probable cause hearing is held within 48 hours.[25]

The Standing Bail Order provides for an individualized hearing no later than 48 hours after arrest.  This falls within the holding of *McLaughlin*, which found that a hearing within 48 hours would defeat a systematic challenge.[26]  The Standing Bail Order goes so far as to appoint counsel at this hearing despite *Gerstein*'s

---

[22] *Id.* at 57.
[23] *Id.* at 55.
[24] *Id.*
[25] *Id.*
[26] *Id.* at 57.

-8-

recognition that even a probable cause hearing, which could include a bail determination, is not a critical stage requiring counsel.[27]   The District Court's Order failed to provide any analysis as to why the Standing Bail Order violates the Fourteenth Amendment in light of the holdings of *Gerstein* and *McLaughlin*.

### C.    The Principles of Federalism Afford Municipalities the Flexibility to Employ Different Pretrial Procedures.

In *McLaughlin*, the Supreme Court gave "proper deference to the demands of federalism" recognizing that "state systems of criminal procedure vary wildly" in the nature and number of pretrial procedures provided.[28]   The Court expressly noted that "there is no single preferred pretrial procedure."[29]   "The Constitution does not impose on the States a rigid procedural framework.   Rather, individual States may choose to comply in different ways."[30]

The *McLaughlin* Court noted that "[i]nherent in *Gerstein*'s invitation to States to experiment and adapt was the recognition that the Fourth Amendment does not compel an immediate determination of probable cause upon completing the administrative steps incident to arrest."[31]   "Plainly, if a probable cause hearing is constitutionally compelled the moment a suspect is finished being 'booked,'

---

[27] *Gerstein*, 420 U.S. at 122.

[28] *McLaughlin*, 500 U.S. at 56.

[29] *Gerstein*, 420 U.S. at 123.

[30] *McLaughlin*, 500 U.S. at 53; *Collins*, 382 F.3d at 545 (rejecting due process challenge to state's 48-hour window for bail hearings, confirming "there is no right to post bail within 24 hours of arrest"); *Holder*, 2010 WL 432357, *33.

[31] *McLaughlin*, 500 U.S. at 53-54.

there is no room whatsoever for 'flexibility and experimentation by the States.'"[32] Incorporating probable cause determinations "into the procedure for setting bail or fixing other conditions of pretrial release" – which *Gerstein* explicitly contemplated,[33] "would be impossible."[34] "Waiting even a few hours so that a bail hearing or arraignment could take place the same time as the probable cause determination would amount to a constitutional violation. Clearly, *Gerstein* is not that inflexible."[35]

Plaintiff advocates for one position only – that of immediate unsecured release for indigents – rather than respecting the principles of federalism espoused in *Gerstein* and *McLaughlin*, which allows authorities "a substantial degree of flexibility" in crafting pretrial procedures. Thus, Plaintiff's position is entirely contrary to the holdings of *Gerstein* and *McLaughlin*.

Plaintiff seeks to have a benefit bestowed upon all indigent arrestees that non-indigent arrestees are ineligible to receive – immediate unsecured release. In doing so, Plaintiff's system requires that non-indigent arrestees post a secured bond to obtain release, thereby perpetuating the dual-track system which Plaintiff seeks to end. If the City is going to be required to release arrestees without any

---

[32] *Id.* at 54.
[33] *Gerstein*, 420 U.S. at 124.
[34] *McLaughlin*, 500 U.S. at 54.
[35] *Id.*

security, it should at least be afforded the flexibility of *McLaughlin* to determine if those who claim indigence are truly indigent.

Neither the District Court nor Plaintiff provide any definition of "immediate" and fail to account for the practical realities and "often unavoidable delays" associated with arrest.[36] Plaintiff's obtuse demand for immediacy only creates greater complications, legally and practically. As the Supreme Court noted,

> Unfortunately as lower court decisions applying *Gerstein* have demonstrated, it is not enough to say that probable cause determinations must be "prompt." This vague standard simply has not provided sufficient guidance. Instead, it has led to a flurry of systematic challenges to city and country practices, putting federal judges in the role of making legislative judgments and overseeing local jailhouse operations.[37]

There is no Constitutional basis for immediate unsecured release following arrest. The Constitution does not compel so rigid a schedule as to require an immediate judicial determination.[38]

The Supreme Court balanced the competing interests of the "rights of individuals and the realities of law enforcement," ultimately holding that a government will be immune from a systematic challenge to its procedures if the

---

[36] *See id.* at 57.

[37] *Id.* at 55-56.

[38] *Id.* at 57.

-11-

probable cause hearing is held within 48 hours.[39]  Although the Court did not go so far as to say that a hearing within 48 hours would be "prompt," it is sufficient to immunize the City from a systematic challenge.[40]

It therefore stands to reason, that if 48 hours is sufficient time to immunize a government from a systematic challenge for determining probable cause, a fundamental principle of the Fourth Amendment, then *a fortiori*, it is sufficient to immunize the City from a challenge to its process for a determination of indigency – notably a group that has never been held to be a suspect class and for an alleged right that has never been explicitly held to be fundamental.

> **D.    Strict Scrutiny Does Not Apply.**
>
> **1.    Because indigency is not a suspect class and there is no fundamental right to pretrial release, rational basis applies**.

The Supreme Court has never held that financial need alone identifies a suspect class for purposes of equal-protection analysis.[41]   In *San Antonio Independent School District v. Rodriguez*,[42] the Supreme Court rejected a claim by students in districts with lower property tax revenues and therefore lower school funding, holding that strict scrutiny does not apply to wealth-based claims.  The

---

[39] *Id.* at 53.

[40] *Id.* at 56.

[41] *Maher v. Roe*, 432 U.S. 464, 470-71 (1977).

[42] 411 U.S. 1 (1973).

Court stated, "where wealth is involved, the Equal Protection Clause does not require absolute equality or precisely equal advantages."[43]

Moreover, contrary to Plaintiff's unsupported assertion, there is no fundamental right to pretrial liberty.[44] Courts have further recognized that "[t]here is no constitutional right to speedy bail."[45]

Plaintiff erroneously asserts that *Salerno* recognized that pretrial liberty is a "fundamental right" giving rise to the application of strict scrutiny.[46] Plaintiff seeks to expand the holding of *Salerno* to create a fundamental right in pretrial liberty despite the Supreme Court's finding only a "strong interest in liberty."[47] Notably, the Court held that the community's interest in security can outweigh a defendant's interest in liberty and therefore a court may deny bail altogether to certain types of defendants.[48] The Supreme Court only acknowledged that liberty, in its broadest sense, is a fundamental right.[49] The Court stated that, "we cannot categorically state that pretrial detention 'offends some principle of justice so

---

[43] *Id.* at 24.

[44] *See Salerno*, 481 U.S. at 752-53.

[45] *Fields*, 701 F.3d at 185; *Woods v. City of Michigan City, Ind.*, 940 F.2d 275, 283 (7th Cir. 1991) (Will, J., concurring) (holding plaintiff's constitutional rights were not violated by his arrest and overnight detention because Eighth and Fourteenth Amendments do not guarantee "instant release for misdemeanors or any other offense"); *Collins*, 382 F.3d at 545 ("There is no right to post bail within 24 hours of arrest."); (*see* Brief of Appellant at n.206).

[46] (Brief of Appellee at 23.)

[47] *Salerno*, 481 U.S. at 750.

[48] *Id.*

[49] *Id.*

rooted in traditions and conscience of our people as to be ranked as fundamental.'"[50]

Plaintiff argues that *Salerno* utilizes strict scrutiny despite arguing in the District Court that only a "heightened" scrutiny applied.[51] Nowhere in *Salerno* is strict scrutiny ever mentioned, let alone applied. Surely, if the Supreme Court intended for strict scrutiny to apply it would have clearly articulated this standard as it has it has in countless other cases.

Although Plaintiff alleges that pretrial release is a fundamental right, he concedes that "the City can detain all arrestees until the commencement of appropriate legal proceedings."[52] But if pretrial release were a fundamental right, then how could a policy of incarcerating everyone withstand strict scrutiny?

In concluding the Standing Bail Order was unconstitutional, the District Court failed to identify what right was violated, whether it is a fundamental right, and if so, from where it is derived. In *McLaughlin*, decided eight years after *Bearden*, the Supreme Court sought to balance competing concerns by establishing a "practical compromise" between the rights of individuals and the realities of law enforcement as recognized in *Gerstein*.[53] A proper understanding of this balance is

---

[50] *Id.* at 751 (citing *Snyder v. Mass.*, 291 U.S. 97, 105 (1934)).
[51] (*Compare* Brief of Appellee at 23 *with* Doc. 34 at 11.)
[52] (Brief of Appellee at 10.)
[53] *McLaughlin*, 500 U.S. at 52, 54-55.

possible "only if one takes into account both sides of the equation."[54]  Granting any

semblance of Plaintiff's demanded system will cause systematic disruption of the

balance of powers.

### 2.    The caselaw relied upon by the District Court and Plaintiff is inapposite.

Plaintiff oversimplifies the Supreme Court's holding in *Bearden*.  Contrary

to Plaintiff's representation, *Bearden* did not hold that an indigent cannot be

imprisoned for failure to pay a fine.  After an in-depth analysis, the Court held that

a trial court must inquire into the reasons a defendant failed to pay a fine before

imprisoning him.

The Supreme Court held that the trial court may imprison a probationer: (1)

if he willfully refused to pay a fine or restitution; (2) if he failed to make sufficient

bona fide efforts legally to acquire the resources to pay, including looking for

employment or borrowing funds; or (3) even if the probationer has not willfully

refused to pay and had made bona fide efforts to acquire the resources but

alternative measures of punishment are not sufficient.[55]  Thus, a court may still

imprison an indigent for failing to pay if certain conditions are met.

The Supreme Court's contemplation of a probationer borrowing money from

family members or friends to satisfy a fine is comparable to an arrestee making

---

[54] *Id.* at 54.
[55] *Bearden v. Georgia*, 461 U.S. 660, 673 (1983).

bona fide efforts to post a secured bond, including borrowing the funds from family members or friends. The Supreme Court specifically found that this was not "contrary to the fundamental fairness required by the Fourteenth Amendment."[56]

Because indigency is not a suspect class, and the right to bail or pretrial release is not a fundamental right, the Equal Protection analysis is therefore subject to rational-basis review.

### E.    The Standing Bail Order Withstands a Rational Basis Analysis.

### 1.    The Standing Bail Order is rationally related to the legitimate government purpose of ensuring an arrestee's appearance at trial.

Not only does the Standing Bail Order comply with the promptness requirement of *McLaughlin*, its use of a bail schedule is also permissible.[57] "There is nothing inherently wrong with bond schedules."[58] Indeed, bond schedules are aimed at making sure that defendants who are accused of similar crimes receive similar bonds.[59] "The bond schedule represents an assessment of what bail amount would ensure the appearance of the average defendant facing such charge."[60]

---

[56] *Id.* at 673.
[57] If possible to do so, a state law or regulation is due to be construed so as to avoid constitutional infirmity. *Pugh*, 572 F.2d at 1058.
[58] *Fields*, 701 F.3d at 184 (citing *Pugh*, 572 F.2d at 1057).
[59] *Fields*, 701 F.3d at 184.
[60] *Id.*

"The schedules are therefore aimed at assuring the presence of a defendant."[61] Thus, the mere use of a schedule does not pose a constitutional problem under the Eighth Amendment or provide a valid § 1983 challenge.[62]

Plaintiff and the District Court fail to make any distinction between pre- and post-conviction bail and/or fines. The majority of caselaw relied upon by Plaintiff and the District Court addresses the conversion of an indigent defendant's fine-only sentence to jail time due to an inability to pay. This however, is factually and legally distinguishable as it is uncontroverted that Plaintiff would have been booked into jail regardless of his socioeconomic status. Notably in *Bearden*, the Supreme Court affirmatively stated that the rule of *Williams* and *Tate*, relied upon by Plaintiff and the District Court, is that the "State cannot impose a fine as a sentence and then automatically convert it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full."[63] Plaintiff, however, was not jailed because he was unable to pay a post-conviction fine. Plaintiff was jailed for violating O.C.G.A. § 46-6-95. Accordingly, the post-

---

[61] *Id.* (relying on *Stack*, 342 U.S. at 5 (the fixing of bail for any individual defendant must be based upon standards relevant to the purpose of assuring the presence of defendant)).

[62] *Fields*, 701 F.3d at 184; *see Glenn v. City of Columbus*, 75 Fed. App'x 983 (5th Cir. 2003); *Terrell v. City of El Paso,* 481 F.Supp.2d 757, 766 (W.D. Tex. 2007) (reporting that "exhaustive research" of challenges to bond schedules under § 1983 yielded no cases where a bond schedule was found unconstitutional).

[63] *Bearden*, 461 U.S. at 667.

conviction cases relied upon by Plaintiff and the District Court such as *Williams* and *Tate* are inapposite.

### 2. Bail schedules provide the flexibility contemplated by the Supreme Court.

The use of a bail schedule is also rational in that it allows for a *de facto* determination of bail contemplated in *Pugh* while also providing the flexibility discussed in *McLaughlin* necessary to make an individualized determination within 48 hours. The Standing Bail Order does just that.

The Sixth Circuit adopted the Fifth Circuit's position in *Pugh*, finding "nothing inherently wrong with bond schedules."[64]  The Standing Bail Order balances the interests of the arrestee and the governing authority by allowing those who can post secured bail pursuant to the bail schedule to do so while also providing the opportunity to be heard within the presumptively constitutional timeframe of 48 hours.[65]  To now eliminate this system of release unjustly penalizes those who can post bail by requiring them to remain in jail longer while those who allege indigency are allowed to walk free without providing any meaningful assurance of their presence at trial.

Notably, Plaintiff fails to point to any inherent problem with the dollar amount set in his case. He does not claim it was excessive either relative to the

---

[64] *Fields*, 701 F.3d at 184.
[65] *See id.*

crime he was charged with or based on the particular facts of his case.  Plaintiff also does not argue that Georgia law creates a liberty interest and even if he did, this allegation would fail because pretrial liberty is not a fundamental right and there is no guaranteed right to bail.  Bail in Georgia is permissive and lies solely within the discretion of the judge.[66]

### 3.    Plaintiff and the District Court fail to account for the practicalities of an unsecured system of release.

Plaintiff claims to seek to end the "dual-track system"[67] of  bail, yet the practical effect of the unsecured system of release for allegedly indigent arrestees demanded by Plaintiff in reality does nothing but perpetuate a bifurcated system based solely on socioeconomic status.

Plaintiff's proposed system leaves no room for a court to question the financial priorities of an "indigent" arrestee:

> In the real world, every individual has his own financial priorities. First for almost everyone are expenses for shelter, food, clothing and transportation to and from work (if there is a job) and to the grocery. These are the necessities of life.  After these expenses, if there is money left, some will spend it on a television, or go to the movies, others will spend it on furniture or nice clothes, others will spend it on alcohol and tobacco.  Many defendants who themselves are technically indigent can get help from family or friends.  [The] concern is that courts not be the last on this list of priorities.  If this is permitted, it makes a mockery of [the] municipal courts....[68]

---

[66] *See* O.C.G.A. § 17-6-1 *et seq.*; *Fields*, 701 F.3d at 187; *Hernandez v. State*, 294 Ga. App. 289, 290 (1990).
[67] (Brief of Appellee at 10.)
[68] *Robertson v. Goldman*, 179 W. Va. 453, 458 (1988) (Neely, J., dissenting).

Plaintiff relies upon *Frazier v. Jordan*, distinguishable from the present case, as it analyzes post-conviction conversion of fine-only sentences to jail sentences.[69] Further, the Fifth Circuit limited its holding to whether the appellees were unlawfully confined, not whether bail or pretrial release is a fundamental right. More important however is Judge Coleman's dissent which discussed the practical effect of the decision he determined was to "establish as a rule of Constitutional law: Persons who have funds may be imprisoned until they pay their fines; those without funds may not be so imprisoned, even if the law prescribed an alternative penalty."[70] "Those with funds are thus denied equal treatment under the law…it is as much a denial of equal protection to discriminate against a person because he has money as it would be to discriminate against one who is poor."[71]

"Even if it were reasonably possible to keep up with the whereabouts and pecuniary status of a misdemeanant, he can never be penalized if he chooses to stay clear of the money needed to pay his fine. Thus it turns out…there is no equal justice under the law. One man is required to pay his fine; another is not."[72] If an arrestee is not required to post any secured bail, then he has little incentive to return for trial.

---

[69] (Brief of Appellee at 15.)
[70] *Frazier v. Jordan*, 457 F.2d 726, 730 (5th Cir. 1972) (Coleman, J., dissenting).
[71] *Id.*
[72] *Id.* at 731.

Plaintiff and his amici rely only on biased statistical studies as support for Plaintiff's unsecured system of release. However, any neutral evaluation shows that the City is not lining its coffers with Municipal Court revenue nor is there the malfeasance found in Ferguson, Missouri, as Plaintiff and his amici falsely accuse the City.

The statistics, however, are not as one-sided as Plaintiff would lead this Court to believe. In reality, since the District Court issued the preliminary injunction, the number of defendants failing to appear has skyrocketed. Another startling example of this reality is in California. Following the enactment of Proposition 47 – which reduced a significant number of felony offenses to misdemeanors – one early impact was that failures to appear in court soared in 40 of the 58 counties surveyed.[73] In Monterey County alone, there was a 33 percent increase in failures to appear for misdemeanor offenses.[74] If this matter hinges on a statistical analysis, it only bolsters the City's position that EJUL's crusade to end the monetary bail system is better suited for the halls of the Georgia General Assembly.

The Standing Bail Order the District Court struck down is not some quirky relic of a bygone age, but a rationally designed system to insure an arrestee's

---

[73] Judicial Council of California, Operations and Programs Division, Criminal Justice Services, "Early Impacts of Proposition 47 on the Courts" (March 2016).
[74] *Id.*

presence at trial. Invalidating this reasonable scheme is bad enough; even worse is the District Court's failure to explain precisely what is wrong with it. The District Court erred, in large part, because it failed to examine the Standing Bail Order, did not disclose what standard of review applies,[75] and failed to distinguish between pre- and post-conviction cases.

The District Court, Plaintiff, and his amici offer ample criticism, but no viable solutions that comply with Georgia law. Georgia law does not contemplate the use of *unsecured* recognizance bonds, contrary to Plaintiff's counsel's own interpretation of O.C.G.A. § 17-6-1(f)(i). The extensive pretrial programs that Plaintiff's amici suggest the City implement are simply not workable for a municipality of Calhoun's size (population of approximately 15,899). Services such as drug testing, in-person reporting, GPS-monitoring and the additional personnel necessary to provide those services cannot practically be implemented in a municipality so small that it does not have its own jail. The cost to implement programs such as those utilized in Washington D.C. is projected well into the millions of dollars, clearly beyond the reach of the City.

Plaintiff's assertion that it is unfair to jail someone for *at most* 48 hours because they cannot immediately post bail in some form, not just cash, begs the

---

[75] "A dispute regarding the appropriate standard of review may strike some as a lawyers' quibble over words, but it is not." *Metro Broadcasting, Inc. v. FCC*, 497 U.S. 547, 610 (1990).

larger question, who would remain in custody if they could post bail? There are arrestees who remain in custody pending arraignment or trial because bail was set at an amount they cannot pay. The converse of Plaintiff's position is also true as judges raise bail amounts to reflect the wealth of a defendant because the standard bail amount is less incentive to appear in court.

The basic, and unwritten, premise underlying Plaintiff's entire theory of bail is that every defendant is entitled not only to a non-excessive bail, but is entitled to make bail. But neither the Constitution, nor statutes, nor caselaw requires such a result. The Eighth Amendment requires only that bail be not "excessive." As Judge Coleman stated in his concurrence in *Pugh*, "[i]f reasonable bail is set and the defendant cannot make it the Constitution does not command that he shall be released."[76] Furthermore, Justice Jackson stated in *Stack* that "[t]his is not to say that every defendant is entitled to such bail as he can provide...."[77] The Fifth Circuit has cited *Pugh* in support of the proposition that "a bail setting is not constitutionally excessive merely because a defendant is financially unable to satisfy the requirement."[78]

---

[76] *Pugh*, 572 F.2d at 1070 (Coleman, J., concurring specially).
[77] *Stack*, 342 U.S. at 6.
[78] *U.S. v. McConnell*, 842 F.2d 105, 107 (5th Cir. 1988).

**F.    It Is the Arrestee's Burden to Assert Indigency.**

The District Court and Plaintiff wholly fail to address with whom the burden lies to inquire and establish indigency and at what point a government has actual knowledge.   If the governing authority has no knowledge of the arrestee's purported indigence, practically speaking, immediate release is not possible.   The 48-hour timeframe of the Standing Bail Order allows the Court to inquire into indigency if not raised by the arrestee sooner.

By way of analogy, defendants in criminal cases have a constitutional right to be represented by counsel.[79]   "However, it is only indigent defendants for whom the trial court must appoint counsel."[80]   "This right extends to every indigent accused who indicates his desire to appeal."[81]   The burden rests with the defendant to raise his indigency with the court in order receive court-appointed counsel.[82]

Thus, if it is a defendant's burden to raise the issue of their indigency in order to receive court appointed counsel, a fundamental right under the Sixth Amendment, this burden to assert indigency applies to arrestees who cannot post

---

[79] U.S. Const. amend. VI.

[80] *Burnett v. State*, 182 Ga. App. 539, 540 (1987).

[81] *McAuliffe v. Rutledge*, 231 Ga. 1, 3 (1973).

[82] *Bostick v. Ricketts*, 236 Ga. 304, 306 (1976) ("The burden of proving his indigency, which must be proved to show he was denied counsel, rests with [defendant]."); *Massey v. State*, 278 Ga. App. 303, 305 (2006) (where defendant retains trial counsel and then claims indigence on appeal, he bears burden of making that fact known to the trial court or some responsible state official); *LaGon v. State*, 334 Ga. App. 14, 17 (2015).

bail, again a group that is not a suspect class for an alleged right that has never been held to be fundamental.

Because the burden rests with the arrestee to put the Municipal Court on notice, the issue then becomes when the municipality has actual knowledge of an arrestee's alleged indigence. If an arrestee fails to raise his alleged indigence, the arresting authority has no knowledge and thereby has no notice of the need to promptly bring the arrestee before a judge. This is one issue that highlights a multitude of practical concerns to which neither Plaintiff nor the District Court offers a workable alternative.

The Standing Bail Order's 48-hour timeframe means, practically, that even if an arrestee fails to raise his indigency, the magistrate judge will make this inquiry *sua sponte* within 48 hours, which the Supreme Court deemed sufficient for a fundamental right.[83] It therefore is sufficient, and constitutional, for a non-fundamental right.

---

[83] Plaintiff would have this responsibility fall on law enforcement officers at the jail. *Brady v. Dill* reflects the fundamental notion that our constitutional system places the responsibility for releasing a detainee on the judicial system, rather than on law enforcement officers who have accomplished the detention. 187 F.3d 104, 113-15 (1st Cir. 1999) (relying on *Baker v. McCollan*, 443 U.S. 137 (1979)).

## II.    THE INJUNCTION WAS IMPROPERLY GRANTED AGAINST THE CITY OF CALHOUN.

### A.    The District Court Erred in Finding the Standing Bail Order Did Not Moot This Litigation.[84]

The District Court found that the issue was not moot by baselessly concluding that "[t]here is no guarantee that Defendant will not return to its former bail policy...."[85]  Even if the issue was not moot, which the City contends it was, the District Court should have conducted a proper constitutional analysis of the Standing Bail Order.[86]

The District Court's and Plaintiff's allegations that the City will revert to its prior policy are unfounded.  Not only does the implementation of the Standing Bail Order moot this litigation as it provides for the same "constitutional due-process standards" as the Clanton Order, the voluntary cessation by the City creates the presumption that it will not revert to the prior policy.

"The doctrine of voluntary cessation provides an important exception to the general rule that a case is mooted by the end of the offending behavior."[87]  "However, there is an important exception to this important exception, when there

---

[84] The City maintains that Plaintiff's claims are barred by the *Younger* doctrine as *Younger* abstention applies to § 1983 claims raising constitutional challenges relating to an ongoing state proceeding, and the District Court therefore erred in not dismissing Plaintiff's claims.  (Brief of Appellant at 19-24.)

[85] (Doc. 40 at 58.)

[86] *See Pugh*, 572 F.2d at 1059.

[87] *Troiano v. Supervisor of Elections in Palm Beach Cty., Fla.*, 382 F.3d 1276, 1283 (11th Cir. 2004).

is no reasonable expectation that the voluntarily ceased activity will, in fact, recur after the termination of the suit."[88] "Moreover, when the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable behavior will *not* recur."[89]

"In cases where governmental policies have been challenged, the Supreme Court has held almost uniformly that voluntary cessation of the challenged behavior moots the claim."[90]  In this Circuit, "a challenge to a *governmental* action has been mooted when the alleged wrongdoers have ceased the allegedly illegal behavior and the court can discern no reasonable chance that they will resume it upon termination of the suit."[91]  "In short, this Court has consistently held that a challenge to a government policy that has been unambiguously terminated will be moot in the absence of some reasonable basis to believe that the policy will be reinstated if the suit it terminated."[92]  "In the absence of any such evidence, there is

---

[88] *Id.*; *see United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) ("The case may nevertheless be moot if the defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated.").

[89] *Troiano*, 382 F.3d at 1283 (emphasis in original); *see Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328-29 (11th Cir. 2004) ("Governmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities.").

[90] *Beta Upsilon Chi Chapter at the Univ. of Florida v. Machen*, 586 F.3d 908, 917 (11th Cir. 2009) (collecting cases).

[91] *Toriano*, 382 F.3d at 1284.

[92] *Id.* at 1285.

simply no point in allowing the suit to continue and [this Court] lack[s] the power to allow it to do so."[93]

Likewise, in *Saladin v. Milledgeville*, because there was no "basis for believing that the City" would break its word, this Court found there was "nothing left for the court to do on those claims except declare that the practices are unconstitutional for the principle of the matter. Principle alone unaccompanied by a live case or controversy does not present a justiciable claim."[94]

In the instant case, there is no record evidence to suggest the City will revert to its prior bail policy, nor has the City suggested this is a possibility. Although the City does not have the authority to dictate bail procedures to Judge Smith, Judge Smith has informed the City that she will not revert to practicing under the previous bail policy and will maintain the current Standing Bail Order. Accordingly, there is no reasonable expectation that there will be a reversion to the prior bail policy.

The Standing Bail Order provides for both the use of a bail schedule and an individualize determination of bail within 48 hours of arrest, which EJUL concedes are constitutional. Given the presumption in favor of government actors, any case

---

[93] *Id.*

[94] *Saladin v. Milledgeville*, 812 F.2d 687, 693 (11th Cir. 1987) (citing *Ashcroft v. Mattis*, 431 U.S. 171, 173 (1977); *Christian Coalition of Ala. v. Cole*, 355 F.3d 1288, 1289 (11th 2004).

or controversy which purportedly existed at the time Plaintiff initiated this action is now moot.

### B.   The Standing Bail Order Is Not The Policy of The City of Calhoun.

#### 1.   The Municipal Court Judge was acting in her judicial capacity.

The Standing Bail Order was enacted by the Municipal Court Judge acting in her judicial capacity. Thus, no liability can be attributed to the City. The promulgation of rules for the orderly process of obtaining bail is more judicial than non-judicial in nature. While rulemaking is obviously not adjudicative, rules of court regulate procedure – "the judicial process for enforcing rights and duties recognized by substantive law and for justly administering a remedy and redress for disregard and infraction of them."[95]

The Standing Bail Order provides the flexibility to make an individualized determination as contemplated by the Supreme Court. The Fifth Circuit has repeatedly held, "[t]he City cannot be liable under § 1983 for having a 'policy' of wrongfully incarcerating defendants because the relevant decisions were made by a municipal judge acting in his judicial capacity."[96]

---

[95] *Sibbach v. Wilson*, 312 U.S. 1, 14 (1941); *see United States v. Smith*, 686 F.Supp. 847, 864 (D. Colo. 1988) (characterizing rules "formulated by the judiciary" as "within the shadow of judicial power").

[96] *Whisenant v. City of Haltom City*, 106 Fed. App'x 915, 917 (5th Cir. 2004) (dismissing § 1983 claim against city based on city's alleged policy of

The Georgia law allowing judges of courts of inquiry to establish a schedule of bails is left solely to the municipal court judge in her judicial capacity.[97]  Had the General Assembly intended for municipalities to have input in the use of bail schedules and orders concerning bail procedures, it could have easily included such language in O.C.G.A. § 17-6-1, but it did not.[98]

Plaintiff altogether ignores the home rule limitations faced by municipalities. Municipalities in Georgia, due to home rule limitations, do not have the ability to enact local laws, rules, or policies on "any other matters which the General Assembly by general law has preempted or may hereafter preempt."[99]  The General Assembly has provided for the types of bail to be utilized in Georgia, and neither the City nor its Municipal Court may authorize the new form of bail demanded by Plaintiff.

---

incarcerating defendants unable to pay misdemeanor fines without holding indigency hearings or appointed counsel); *DeLeon v. City of Haltom City*, 106 Fed. App'x 909, 911 (5th Cir. 2004) (rejecting contention that City had power to set judicial policy for a municipal judge...or that it could have ratified municipal judge's judicial conduct, even if its policy makers knew of judge's conduct and approved of it); *Burks v. Price*, 6:13cv746, 2015 WL 3622684,*8 (E.D. Tex. June 10, 2015) ("[A]ny decisions regarding whether or not to hold an indigency hearing would be made by the judge, not the municipality. The Fifth Circuit has held that a municipal judge acting in his judicial capacity does not act as a municipal official or lawmaker.").

[97] *See* O.C.G.A. § 17-6-1(f)(1).
[98] *Compare with* O.C.G.A. § 42-8-100.
[99] O.C.G.A. § 36-35-6(a).

Plaintiff's allegation that the City has an unconstitutional policy as to municipal court proceedings conducted by a judge in the exercise of her judicial authority does not support a claim for relief against the City under § 1983.

## 2.    There is no implied right of action.

The District Court erred in finding that the City "certainly has control over its chief of police, who is the custodian of Defendants' arrestees."[100] Nowhere in Plaintiff's Complaint did he ever intimate that an injunction against the City would be proper because the police chief, as jailer, allegedly played some role in the process.  In fact, there is significant doubt this argument is even properly asserted as it was raised for the first time in Plaintiff's reply brief in support of his motion for class certification.

Furthermore, Plaintiff's argument is based on an "implied right of action" theory.[101]  The District Court never addressed whether an implied right of action can be brought when a § 1983 claim exists given that Plaintiff did not sue the police chief in his official capacity; the only defendant named was the City itself.[102]  Because injunctive relief is available under § 1983, an implied right of action is duplicative and unavailable.[103]

---

[100] (Doc. 40 at 64-65.)
[101] (Brief of Appellee at 57-59.)
[102] *See* (Doc. 1); *Hearth, Inc. v. Dep't of Public Welfare*, 617 F.2d 381, 382 (5th Cir. 1980) ("[F]ederal courts, and this Circuit in particular, have been hesitant to find causes of action arising directly from the Constitution."); *Pauk v. Bd. Of*

-31-

### C.    Plaintiff Improperly Asserts His Claims Under The Fourteenth Amendment.

Plaintiff asserts his allegations solely under the Fourteenth Amendment. Plaintiff's claims, however, are more appropriately asserted under the Eighth Amendment as Plaintiff is alleging that the amount of his bail was so excessive that he could not afford to pay it, resulting in a prolonged detention.[104]    Plaintiff obscures the true nature of his claims in a legal fog, relying on overheated freedom rhetoric and the biased statistical studies of his amici which are more appropriately debated on the floor of the legislature than in this Court.    The conflation of the true nature of the legal issue is fatal to Plaintiff's claims.

The Eighth Amendment expressly contemplates the use of a monetary bail system, prohibiting only *excessive* bail, and is the constitutionally-prescribed avenue for challenging the amount of bail.[105]

The Fourteenth Amendment cannot be utilized to eliminate or expand those rights already provided for by the Eighth Amendment.    The Supreme Court has "always been reluctant to expand the concept of substantive due process," holding

---

*Trustees of City of Univ. of New York*, 654 F.2d 856, 864-65 (2d Cir. 1981) ("[W]hen § 1983 provides a remedy, an implied cause of action ground on the Constitution is not available.").

[103]  *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 34 (2010) ("*Monell*'s 'policy or custom' requirement applies in § 1983 cases irrespective of whether the relief sought is monetary or prospective.").

[104]  Plaintiff maintains that he is not challenging the constitutionality of O.C.G.A. § 17-6-1 *et seq.*

[105]  *See Stack v. Boyle*, 342 U.S. 1 (1951).

that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'"[106]  Plaintiff's reliance upon the Fourteenth Amendment to undermine the rights provided by the Eighth Amendment is therefore erroneous.[107]

The Supreme Court has rejected the type of claim Plaintiff now asserts – a wealth-based disparate impact claim.  Because Plaintiff failed to challenge the amount of bail imposed, the issue on appeal is not any alleged wrong to Plaintiff, but rather the constitutionality of O.C.G.A. § 17-6-1 *et seq.* and the Standing Bail Order's use of a secure bail schedule as expressly permitted by Georgia law.

## CONCLUSION

In finding the Standing Bail Order unconstitutional, the District Court not only failed to conduct a constitutional analysis, it also failed to offer any guidance as to an acceptable alternative.  Plaintiff now asks this Court to further this grave

---

[106] *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *see United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ("[I]f a constitutional claim is covered by a specific constitutional provision…the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."); *Nat'l Aeronautics & Space Admin. v. Nelson*, 562 U.S. 134 (2011).
[107] *Albright*, 510 U.S. at 273 (*Graham* applies if plaintiff is trying to bring what is essentially a duplicative First Amendment claim under the "more generalized notion of substantive due process").

constitutional error by affirming the District Court's Order.  The current Standing Bail Order provides the constitutional protections of the Fourteenth Amendment and is expressly authorized under Georgia law.  Nothing in the Constitution requires that a defendant properly held before trial be afforded a bail hearing *immediately* upon arrest.  Plaintiff's claims therefore necessarily fail, and the District Order's Order was entered in error and should not stand.

Respectfully submitted this 8th day of September, 2016.

**BRINSON, ASKEW, BERRY, SEIGLER, RICHARDSON & DAVIS, LLP**

*/s/ J. Anderson Davis*
J. ANDERSON DAVIS
Georgia Bar No. 211077
A. FRANKLIN BEACHAM III
Georgia Bar No. 043743
SAMUEL L. LUCAS
Georgia Bar No. 142305
615 West 1st Street
Rome, Georgia 30161
Phone: (706) 291-8853
Fax: (706) 234-3574

*Attorneys for Appellant City of Calhoun, Georgia*

-34-

**CARLOCK, COPELAND & STAIR, LLP**

*/s/ David F. Root*
DAVID F. ROOT
Georgia Bar No. 614125
ABBY C. GROZINE
Georgia Bar No. 542723
One Ninety One Peachtree Tower
191 Peachtree Street, N.E.
Suite 3600
Atlanta, Georgia 30303
Telephone: (404) 522-8220
Fax (404) 523-2345

*Attorneys for Appellant City of Calhoun, Georgia*

*/s/ George P. Govignon*
GEORGE P. GOVIGNON
Georgia Bar No. 303290
109 North Wall Street
Calhoun, Georgia 30701
Telephone: (706) 629-7070
Facsimile: (706) 629-7438

*Attorney for Appellant City of Calhoun, Georgia*

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of F. R. App. P. 32(a)(7)(B)(ii), as modified by this Court's Order dated March 28, 2016, because it contains 8,000 words, excluding those parts of the brief exempted by Fed. R. App. 32(a)(7)(B)(iii) and 11th Cir. 32-4.

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared using Times New Roman 14-point font, which a proportionately spaced font.

Respectfully submitted this 8th day of September, 2016.

*/s/ Abby C. Grozine*
DAVID F. ROOT
Georgia Bar No. 614125
ABBY C. GROZINE
Georgia Bar No. 542723
One Ninety One Peachtree Tower
191 Peachtree Street, N.E.
Suite 3600
Atlanta, Georgia 30303
Telephone: (404) 522-8220
Fax (404) 523-2345

*Attorneys for Appellant City of Calhoun, Georgia*

-36-

## CERTIFICATE OF SERVICE

I certify that, September 8, 2016, I served the foregoing document by filing a copy with the Clerk of Court using the CM/ECF system, which will automatically send notification of filing to all counsel of record.

/s/ Abby C. Grozine
DAVID F. ROOT
Georgia Bar No. 614125
ABBY C. GROZINE
Georgia Bar No. 542723
One Ninety One Peachtree Tower
191 Peachtree Street, N.E., Suite 3600
Atlanta, Georgia 30303
Telephone: (404) 522-8220
Fax (404) 523-2345

*Attorneys for Appellant City of Calhoun, Georgia*

-37-